### BOLING v. ASHBRIDGE et al.

No. 14838—Opinion Filed June 30, 1925.

1. **Insurance — Casualty Policy Providing for Insurer to Furnish Attorneys—Nonliability for Attorney's Fee Incurred by Insured.**

Where a policy of casualty insurance contains a clause providing that the assurer will defend all suits brought against the assured to enforce a claim for damages, and the assurer does provide counsel to so defend, the assured may not recover from the assurer the sum of the fees paid to private counsel employed by the assured to assist assurer's counsel in the defense of the action.

2. **Same—Appeal of Case Opposed by Insurer.**

Where judgment is obtained against the assured and the assurer protests against an appeal to the Supreme Court and insists on the assured satisfying the judgment or accepting and paying the sum agreed upon as a compromise, the assurer is not liable for attorney's fees and costs incident to such appeal.

3. **Indemnity—Nature of Contract—Time for Action—Guaranty Contract Distinguished.**

Contracts to pay legal liabilities differ from contracts of indemnity, in this, that, upon the latter, action cannot be maintained and recovery had until the liability is discharged, while upon the former the right of action is complete when the liability attaches.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by Julia E. Ashbridge against Dottie R. Boling, J. R. Boling, and Tulsa Auto Livery Company. Plaintiff prays judgment against defendants in the sum of $20,000. Judgment for plaintiff, and Dottie R. Boling appealed and judgment was affirmed by this court. Garnishment proceedings were instituted against the New Amsterdam Casualty Company, and it answered that it owed Dottie R. Boling nothing. Julia E.

Ashbridge and Dottie R. Boling elected to take issue with the answer of the garnishee and upon hearing had the court rendered judgment that the New Amsterdam Casualty Company was indebted to Dottie R. Boling in the sum of $5,000, and ordered the New Amsterdam Casualty Company to pay this sum into court to be applied on the judgment of Julia E. Ashbridge against Dottie R. Boling. From this judgment of the court Dottie R. Boling appeals. Affirmed.

H. B. Martin and R. A. Reynolds, for plaintiff in error.

Albert L. McRill, for defendant in error New Amsterdam Casualty Company.

Opinion by RUTH, C. One of the motor cars belonging to Dottie R. Boling struck and killed W. C. Ashbridge, and his widow, Julia E. Ashbridge, brought suit and obtained judgment against Dottie R. Boling in the sum of $20,000, which judgment was by the Supreme Court affirmed. Approximately $5,000 was realized from the sureties on the supersedeas bond.

It appears Dottie R. Boling was carrying indemnity insurance on her automobiles limited to $5,000 liability for the death of one person caused by any one of her automobiles. After exhausting the assets of the sureties on the supersedeas bond, Julia E. Ashbridge caused a writ of garnishment to be issued to the New Amsterdam Casualty Company, and the company answered that they were not indebted to Dottie R. Boling, and had no property, moneys, effects, or credits in their hands belonging to Dottie R. Boling. Both Julia E. Ashbridge and Dottie R. Boling elected to take issue on the company's answer, and after hearing had the court found that the New Amsterdam Casualty Company was indebted to Dottie R. Boling, under a certain policy of insurance, in the sum of $5,000, and directed said company to pay said sum by check to the court clerk, and directed the court clerk to indorse the check to Julia E. Ashbridge, and credit the amount on the judgment in the case of Ashbridge v. Boling. From this judgment of the court in finding the New Amsterdam Casualty Company was only indebted to her in the sum of $5,000 Dottie R. Boling appeals.

The policy of insurance will not be set out in full. The New Amsterdam Casualty Company will be designated as the company, and Dottie R. Boling as the assured.

The company agreed to indemnify the assured from any liability for damages on account of bodily injuries, including death, accidentally suffered by any person or persons

not employed by the assured, by reason of the use and maintenance of the assured's automobile. Conditions "B" and "C" of the policy provided for notice of accident or the filing of action, and we assume these conditions were complied with, as there is no question raised thereon.

With regard to suits filed, condition "C" contained the clause that:

"The company will defend such suit whether groundless or not, in the name and on behalf of the assured. The expenses incurred by the company in defending such suit, including costs, if any, taxed against the assured will be borne by the company whether the verdict is for or against the assured irrespective of the limit of liability expressed in the policy.

"The company shall have the right to settle any claim or suit at any time."

Condition "D" of the policy provided:

"The assured shall not voluntarily assume any liability, nor shall the assured, without the written consent of the company previously given, incur any expense or settle any claim, except at his own costs, nor interfere in any negotiations for settlement or in any legal proceeding conducted by the company, on account of any claim," etc.

Condition "E" provides:

"No action shall lie against the company to recover any loss under or by reason of this policy unless it shall be brought in the name of the assured for loss actually sustained and paid in money, by the assured in satisfaction of a judgment after actual trial of the issue, nor unless such action is brought within two years after such judgment against the assured has been so paid, and satisfied."

Condition "N" provided that the liability of the company for loss from accident resulting in bodily injuries to, or in the death of one person only, is limited to $5,000.

There was only one question to be determined in this garnishment proceeding, to wit, In what amount, if any, was the company indebted to the assured?

There was considerable irrelevant, incompetent and immaterial evidence introduced on both sides.

It appears that after judgment rendered in favor of Julia E. Ashbridge for $20,000, an offer of compromise for $10,000 was made, and this was subsequently reduced to $6,000, and the assured wanted the company to pay $5,000, and she would pay the remaining $1,000; according to witnesses the company offered to pay $1,500, and again $3,500, of the $6,000.

The company was represented by counsel in the trial of Ashbridge v. Boling, and advised against an appeal, claiming there was no hope for a reversal of the trial court's judgment; nevertheless Dottie R. Boling appealed, and testified she had already paid out $1,000 in attorneys' fees and owed $500 more, but had not paid the judgment.

Assured assigns as error: "Error of the court in assessing the amount of the recovery," and quotes at length from St. Louis Dressed Beef and Provison Company v. Maryland Casualty Company, 201 U. S. 173, 50 L. Ed. 712; Hinkley v. Pittsburgh Bessimer Steel Company, 121 U. S. 264, 30 L .Ed. 967, 7 Sup. Ct. Rep. 875; Brassil v. Maryland Casualty Company, 210 N. Y. 235, 104 N. E. 622; and Loughlin v. Brassil, 187 N. Y. 128, 79 N. E. 854. These cases are in no manner in point. In St. Louis D. B. & P. Company v. Maryland C. Co., supra, the beef company was sued for damages occasioned by one of its teams. The casualty company denied liability for the reason the driver of the teams was not an employe of the beef company and refused to defend the suit; the beef company compromised, and sued to recover the money actually paid out, plus attorney's fees.

Hinkley v. Pittsburgh B. S. Company, supra, was an action for breach of contract to purchase 6,000 gross tons of steel rails according to contract, and the point decided was, What was the proper rule of damages? and the court said, "And in case of a contract like this, that the loss is among other things, the difference between the cost of doing the work and the price paid for it."

In Brassil v. Maryland Casualty Company, supra, there was an opportunity to compromise the case before trial. The assurer refused to compromise or defend the case, judgment was for plaintiff in the damage action, and the assured appealed. The judgment was reversed and later the case was dismissed for failure to prosecute, and the assured brought action against the assurer for the costs of litigation and recovered.

Condition "E," heretofore referred to, constituted this policy a contract of indemnity and not a contract to pay legal liabilities. The assured testified she had not paid anything on the judgment, but had paid $1,000 attorney's fees, but the testimony of her attorneys discloses she has not paid anything in money, but gave a promissory note to her attorney for this $1,000 fee. When the offer of compromise in the sum of $6,000 was made, had the assured accepted the offer and paid the money, as she had a right to do, after the assurer had refused

to pay more than $1,500 on a $5,000 policy, a different question would have been presented on an action to recover on the policy, and the cases cited in plaintiff's brief would have been applicable and in point.

We fully appreciate the inconvenience to which it may subject the assured, to raise the amount of money necessary to meet the offer of compromise, but so long as parties will enter into such contracts, the courts are powerless to strike from the policy what is generally designated by the courts as the "no action" clause—Condition "E," which clause requires the assured to first pay or satisfy the judgment before requiring the assurer to indemnify her for money actually paid out.

In Maryland Casualty Company v. Peppard et al., 53 Okla. 515, 157 Pac. 106, it was contended that as the construction company or Skirvin had not paid out or lost anything by reason of the judgment against them, they would have no action against the insurer, and that it naturally followed that if they had no action, the plaintiff's (Peppard's) action must fail, citing authorities.

Kane, C. J., delivering the opinion of this court, said:

"If the policies involved herein contained this 'no action' clause, we have no doubt that the contention of counsel for defendant would be supported by a preponderance of the authorities. The other side of the proposition, however, even where the policies contain the 'no action' clause, is not without respectable support," citing Sanders v. Frankford Marine Accident and Plate Glass Insurance Company, 72 N. H. 485, 57 Atl. 655, 101 Am. St. Rep. 688, and Patterson v. Adam et al., 119 Minn. 308, 138 N. W. 281, 48 L. R. A. (N. S.) 184.

Continuing, the learned Chief Justice said:

"It would be more reasonable to assume that the parties intended the contracts should belong to one of the two well-known classes into which such contracts have been generally divided by the companies extensively engaged in casualty insurance business, to wit: 'Policies to indemnify against loss,' and 'Policies to indemnify against liability.' It may be well to state here (said the court) that the difference between the two classes of contracts is that upon the former an action cannot be brought and a recovery had until the liability is discharged, while upon the latter the cause of action is complete when the liability attaches."

In Curtis & Gartside Co. v. Aetna Life Insurance Co., 58 Okla. 470, 160 Pac. 465, the policy contained the "no action" clause, and the court, on p. 473, said:

"It was not because of the injury to Prybyl or of the action by him against the assured, that the insurer became liable on its policy. It was the fact that the assured had actually paid the judgment. Until the assured paid the money, the judgment rendered against it, no claim, cognizable in a court of law, accrued to it under the terms of the policy. Not until such time had a loss accrued to the assured, though its liability was fixed by the final judgment. Payment of the judgment was a condition precedent to plaintiff's cause of action, and until that was done it was not damnified within the meaning of the policy; hence was not entitled to be indemnified."

American Employers Liability Insurance Co. v. Fordyce, 62 Ark. 562, 36 S. W. 1051, 54 Am. St. Rep. 305: Finley v. United States Casualty Co., 113 Tenn. 592, 83 S. W. 2, 3 Ann. Cas. 962; Connolly v. Bolster, 187 Mass. 266, 72 N. E. 981; Allen v. Aetna Life Insurance Co., 145 Fed. 881, 76 C. C. A. 265, 7 L. R. A. (N. S.) 958; Maryland Casualty Co. v. Omaha El. L. & P. Co., 157 Fed. 514, 85 C. C. A. 106.

In view of the fact that the assurer in the case under review came in and defended in the trial court, it was not liable for attorney's fees of assured's private counsel, employed in the case, and as the assurer insisted that the assured do not appeal from the judgment but effect a compromise and pay the money agreed upon, the assurer is not liable for the attorney's fees and costs of appeal.

Counsel for assured insists it was the duty of the assurer to appeal the case, but this would have been manifestly unjust, as the assurer would have been required to furnish a supersedeas bond, in the sum of $40,000, and upon affirmation of the judgment, to pay $20,000, when their liability under the policy did not exceed $5,000, plus costs of suit.

In view of the holdings of this court in the authorities herein cited, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 36 C. J. p. 1092, §67. (2) 36 C. J. p. 1092, §68. (3) 28 C. J. p. 892, §8; anno. 48 L. R. A. (N. S.) 184 et seq.; 14 R. C. L. p. 1321.