TRI-STATE CASUALTY INS. CO. v. STEKOLL.

No. 33176.    June 28, 1949.

*208 P. 2d 545.*

Savage, Gibson & Benefield, of Oklahoma City, and A. M. Covington, of Tulsa, for plaintiff in error.

Philip N. Landa, of Tulsa, for defendant in error.

CORN, J. Prior to 1942 the plaintiff, operator of oil producing properties in Oklahoma, had secured workmen's compensation and public liability insurance from defendant, a domestic casualty company, through its agent. Upon acquisition of oil properties in Kansas he made oral application to the agent for compensation and public liability coverage of his Kansas employees, and this application was transmitted to defendant. Pursuant to the request, February 25, 1942, defendant issued what was denominated an "extraterritorial endorsement" of plaintiff's policies, wherein it was stated that plaintiff did not have a sufficient number of employees in Kansas to come under the Workmen's Compensation Laws of that state. Under the terms of this special endorsement defendant agreed to reimburse plaintiff for any liability upon losses from injuries that might be determined against him in the State of Kansas.

Plaintiff brought this suit alleging defendant had collected $1,436.45 premiums, of which amount $680.31 was paid for insurance coverage in Kansas, and was unearned because no risk had attached to defendant out of the Kansas operations, or to plaintiff's employees there, and that no premiums were earned under the policy, based upon the pay roll of Kansas employees, but defendant had wrongfully collected same, in that defendant was not licensed to do business in that state and was without authority to write workmen's compensation insurance there.

This amended petition further alleged plaintiff had five or more employees in Kansas during each year in question. Also, that under applicable Kansas statutes the plaintiff's work came under the Workmen's Compensation Act, which applied to all employers of more than five persons continuously employed for one month, unless the employer of a lesser number elected to come under the Act; and that employers who did not file an election were presumed to come thereunder; that by providing compensation an employer was required to carry insurance with a company licensed to do business in that state.

Demurrer to the petition was overruled and defendant answered by a general denial, with specific allegations that: (1) the premiums were paid according to the policy provisions and the policies were in force and effect, the coverage being applicable to Kansas; (2) plaintiff was estopped to assert the invalidity of the policies, having accepted and operated under them, and that there had been a report and acceptance of a loss thereunder by defendant; (3) plaintiff could not recover in the absence of a tender back of the amount paid by defendant on the Kansas operations; (4) defendant's method was the usual and customary manner of handling, was sanctioned by insurance officials in Kansas, and the companies considered themselves bound.

Upon trial the parties stipulated that: the applicable Kansas statutes were as alleged; the policies were in force; the pay rolls were reported and the pre-

miums paid as alleged by plaintiff; that the defendant never was licensed to do business in Kansas.

Plaintiff's evidence was substantially as follows: The agent who procured the policies testified plaintiff made oral application for compensation and public liability coverage, telling this agent he had one employee in Kansas, and would work one or more at intervals and thus wanted protection. The agent so advised defendant and the "extraterritorial endorsement" was issued and attached to plaintiff's policy, information having been given defendant that the entire Kansas pay roll would be less than $900 per year.

Plaintiff's accountant testified plaintiff had five men working in 1942, and eleven in 1943 in Kansas. However, plaintiff's books were produced at the trial and this witness was unable to testify from those introduced as to the exact number working continuously for more than one month. In June, 1945, defendant's auditor was examining the books and advised this witness that plaintiff did not have workmen's compensation coverage in Kansas.

Plaintiff himself testified he had filed no election in Kansas and had no other insurance for his operations there; the policies were kept in effect by payment of premiums based upon the pay rolls for both states which were turned in and he thought he had workmen's compensation coverage. Only one injury was reported in Kansas, and defendant paid the medical bill of about five dollars. When plaintiff learned in 1945 that he did not have regular compensation coverage the present action was instituted. Defendant's demurrer to plaintiff's evidence was overruled.

One West, vice president of the defendant company, testified that plaintiff's policy was a standard workmen's Compensation and Employer's Liability policy, and was written at the request of defendant's agent upon information the agent furnished. Defendant never was advised of any changes by either the plaintiff or this agent, and so assumed the situation remained the same. Defendant offered to prove by this witness that the "extraterritorial endorsement" was a customary practice for employers whose business was primarily in one state, but who had minor operations in other states which did not expose them to liability for workmen's compensation. Further, that such procedure was approved by insurance officials in Oklahoma, Kansas, and other states, and that upon execution of such an endorsement it was customary to accept and pay the claims under the policies, and that defendant had paid many such claims. This offered testimony was refused by the court. The witness further testified plaintiff had not tendered back any money or other expenses paid out by defendant under the policy by reason of the endorsement; and that compensation insurance rates in Kansas were cheaper than in Oklahoma, but the rate charged plaintiff's combined pay roll was the Oklahoma rate.

After hearing the evidence and argument of counsel, the trial court overruled defendant's demurrer to the evidence, upon which the court had reserved his ruling, overruled defendant's motion for judgment, and entered judgment for plaintiff in the amount of $675.31.

The assignments of error are presented under two propositions. The first contention is that the endorsement constituted a valid contract of insurance, enforceable against defendant as a contract of indemnity, and as such defendant assumed a risk and thereby earned the premiums.

Plaintiff urges that he applied for, and expected to receive, a workmen's compensation policy, but the policy issued was not authorized in the State of Kansas, did not cover his operations there, and no risk attached to defendant out of plaintiff's operations in that state.

Opposed to this argument defendant admits that the "extraterritorial en-

dorsement" is not a true workmen's compensation policy, but insists it went even further and gave plaintiff an indemnity contract, insofar as the Kansas Compensation Act was concerned, rather than an insurance contract. Upon this basis the defendant agrees the problem is whether it (defendant) assumed any risk as a matter of law by the execution of the policy endorsement, insofar as the plaintiff's Kansas operations were concerned.

Plaintiff points out that the original policy was the usual form of workmen's compensation policy issued in Oklahoma. And, that our Compensation Law has no extraterritorial application. See Battiest v. State Ind. Comm., 197 Okla. 618, 173 P. 2d 922. Upon this basis the plaintiff argues that if any Oklahoma-hired employee was working in Kansas temporarily and was injured, he would not be covered by Oklahoma Compensation Law. Thus plaintiff says the only purpose of this endorsement was to cover the possibility of injuries to plaintiff's Oklahoma-hired employees who might be injured while working in the other state; and, that while the endorsement did not make the policy a Kansas compensation policy, it did serve to provide indemnity for any loss the plaintiff might sustain by reason of injury to his Oklahoma employees who might be working extraterritorially. This argument provides the basis of plaintiff's contention that no risk was assumed by defendant under the endorsement that was not already assumed under the original policy. The policy had the following standard form provision:

Section I.b. "To Indemnify this Employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada. . . . "

In Employer's Cas. Co. v. T. E. Wiggins, Inc., 168 Okla. 295, 32 P. 2d 886, we had occasion to consider the effect of such a provision as above quoted in a policy of compensation insurance. Therein an Oklahoma-hired employee was injured while working in Arkansas, which state had no Compensation Act, and brought a common-law action for damages for the injuries suffered in that state and recovered judgment. The insurer thereafter sued the employer to recover certain premiums, and the employer then set up the employee's Arkansas judgment by way of counterclaim to such action.

In sustaining the insured's right to recover the amount expended under the Arkansas judgment, we held the insured employer was entitled to be indemnified for all amounts expended because of the judgment, and that the policy provision (the same as quoted above) was intended to cover indemnity for loss for any liability imposed upon the employer by law for damages for injuries received by workers legally employed, as provided in the policy, wherever such injuries might be sustained.

Under this holding it is evident that plaintiff's argument that the purpose of the endorsement was to provide compensation coverage for such of plaintiff's Oklahoma-hired employees as might be working temporarily in Kansas, and that thus the endorsement assumed no risk and performed no function not already provided for under the original policy, is without substantial merit. The quoted provision was directed toward, and did afford the required coverage for Oklahoma-hired employees who might be injured while working outside the jurisdiction of this state.

The construction of the contract urged by plaintiff would require that one of the provisions, either Ib. or the extraterritorial endorsement, be entirely disregarded as serving no purpose. It is a cardinal principle of construction that a contract must be construed so as to give effect to all parts thereof, if at all possible. Rushing v. Manhattan Life Ins. Co., 224 Fed. 74.

The question then remains whether, under the endorsement, defendant assumed any responsibility or risk for injuries that might arise out of plaintiff's Kansas operations. Obviously the intention of the parties was to provide additional or further compensation coverage than that accorded by the original policy. Defendant points out that it considered itself bound, accepted and paid claims under the policy, and furnished other services, while plaintiff urges that he applied for workmen's compensation coverage, and was entitled to a valid compensation policy which would cover his operations in Kansas.

We think it unnecessary to consider all the matters urged by the parties. Plaintiff admits acceptance of the policy endorsement, and retention of same for more than four years, but insists that same did not cover his Kansas operations. Defendant, in turn, admits that this was not a true compensation policy, but urges that it was an indemnity contract which bound defendant to reimburse plaintiff for any loss arising out of his Kansas operations, even though defendant was not licensed to do business in that state. Neither do we consider as controlling herein the question whether plaintiff came under the Kansas Compensation Law, or whether he elected or was presumed to be bound thereby. The endorsement stated that the scope of plaintiff's operations did not come within the jurisdiction of that state's Compensation Act, and then provided as follows:

"(2) In the event an employee of the named assured, while operating in the State of Kansas is accidentally injured, as defined in the policy contract, and as a result of such accidental injury arising out of and in the course of employment, it is determined or found by the Industrial Accident Board, or similar governing body of such States, that the said employee does come within the meaning and under the Workmen's Compensation Act and is entitled to the benefits of the provisions thereof, then the Company will in that event protect and defend the named assured in his stead, and indemnify the assured as to such valid claims, judgments or awards as may be rendered against the assured on behalf of such injured employee."

The obvious import of this provision is that defendant firmly bound itself to indemnify plaintiff *for any* loss arising out of the plaintiff's operations in that state.

The general rule as regards a contract of indemnity is stated in 29 Am. Jur., Insurance, section 1061, as follows:

"The question has frequently arisen whether a contract of insurance protecting the insured against losses due to injuring the property or person of a third person is one of liability or indemnity. The general distinction between the two kinds of insurance is that if the policy is one against liability, the coverage thereunder attaches when the liability attaches, regardless of actual loss at the time; but if the policy is one of indemnity only, an action against the insurer does not lie until an actual loss in the discharge of the liability is sustained by the insured. In general, the class into which a particular policy falls depends upon the intention of the parties. * * *"

In Curtis & Gartside Co. v. Aetna Life Ins. Co., 58 Okla. 470, 160 P. 465, paragraphs 1 and 2 of the syllabus state:

"A clause in a policy undertaking to indemnify assured against loss by reason of liability on account of injuries to employees, by which the insurer undertakes to defend proceedings against the assured, unless it should elect to settle the same or pay the assured the indemnity provided for, does not make the contract one guaranteeing payment of an obligation of the assured, rather than one of indemnity, where another clause of the policy provides that no action shall be brought against the insurer unless by the assured himself to reimburse him for loss actually sustained and paid; the former clause being merely an ad-

ditional privilege for the protection of the insurer.

"Contracts to pay legal liabilities differ from contracts of indemnity, in this, that, upon the latter, action cannot be maintained and recovery had until the liability is discharged, while upon the former the right of action is complete when the liability attaches."

See, also, Boling v. Ashbridge, 111 Okla. 66, 238 P. 421.

The plaintiff applied for and secured the contract covering his Kansas operations for his own benefit, in order to be reimbursed and thus suffer no loss for any injuries his employees in Kansas might receive. Defendant contracted to indemnify plaintiff against such losses, in consideration of a premium, which the parties agreed should be calculated upon the combined pay rolls of plaintiff's operations in both states. Having unequivocally bound itself to reimburse plaintiff for any loss arising under the terms of the endorsement, it is clear that defendant did contract to accept such risk, was bound by its contract in this respect, and therefore was entitled to charge and collect premiums for the risk so assumed.

Judgment reversed.