**GAY & TAYLOR, INC., Plaintiff,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant.**

**No. CIV–79–1268–D.**

United States District Court,
W.D. Oklahoma.

Aug. 6, 1981.

On Attorney's Fees Nov. 2, 1981.

William C. Anderson and Richard P. Hix, Tulsa, Okl., for plaintiff.

Donald R. Wilson, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

This is an action by Plaintiff to recover on an adjuster's professional liability insurance policy issued to Plaintiff by Defendant. This Court has subject matter jurisdiction by reason of diversity of citizenship and amount in controversy pursuant to 28 U.S.C. § 1332. A non-jury trial was conducted herein on November 6 and 7, 1980, and January 7, and May 27, 1981. The parties have submitted to the Court the testimony of certain witnesses in open court, a stipulation of facts, exhibits, the depositions of James Foliart, Glenn Huff, John Norman and Patrick Ryan and trial briefs. Arguments have been heard. The action is presently before this Court for decision.

The facts of this case as stipulated to by the parties and as presented at trial are found by the Court as follows: Plaintiff is a firm in the business of adjusting casualty claims for insurance companies. In May of 1976 Plaintiff was retained by American Family Insurance Company (American Family) to adjust a claim against one of American Family's insureds under an auto liability policy.[1] Plaintiff sent its agent, Tommy Ward (Ward), to investigate and adjust said claim. Ward's contact at American Family was T.J. Hollingsed (Hollingsed), the branch claims manager. On May 14, 1976, during a conversation with Hollingsed, Ward reached the conclusion that the policy limits involved in said claim were $10,000.00 per person and $20,000.00 per occurrence (ten/twenty).

On June 18, 1976, Ward met with the families of Mrs. Chandler and Mrs. Neely who were killed in the auto accident giving rise to the claim being adjusted by Ward. Ward represented at this meeting that American Family's insured had ten/twenty coverage and that the best he could offer the relatives of the deceased women to settle their claims would be $10,000.00 on the Chandler claim and $5,000.00 on the Neely claim. This would apparently leave $5,000.00 in said policy to settle Mrs. Brotherton's claim, who was the woman injured in said accident. This arrangement was accepted by the relatives of Mrs. Chandler and Mrs. Neely and on July 1, 1976, checks for $10,000.00 and $5,000.00 were delivered and releases were executed for the Chandler and Neely claims.

On July 14, 1976, Ward sent a letter to Mrs. Brotherton's attorney representing that there was $5,000.00 remaining in the American Family policy with which to settle her claims. On July 20, 1976, Hollingsed called Ward and told him that his letter to Mrs. Brotherton was inaccurate as to the policy limits and Ward then sent another letter to Mrs. Brotherton's attorney stating that the coverage was slightly higher than earlier stated. Brotherton's attorney refused to settle the case until he saw the policy in question at which time it was discovered that the coverage was $25,000.00/$50,000.00. Ward never apprised the Chandlers or the Neelys of the actual policy limits as he was not authorized to do so by American Family.

---

1. The automobile accident which gave rise to the subject claims occurred on May 5, 1976, near Westville, Oklahoma. Three persons were killed and a fourth was severely injured.

Subsequently on July 19, 1978, the Neelys and Chandlers discovered the true policy limits of the American Family policy and filed suit against Gay & Taylor, Ward and American Family in the United States District Court for the Western District of Oklahoma, Case No. CIV–78–0752–T. The complaint alleged fraud by misrepresentation and bad faith on the part of the Defendants and prayed for $235,000.00 in actual damages and $6,765,000.00 in punitive damages. Plaintiff notified Defendant St. Paul Fire & Marine Insurance Company (St. Paul) that there may be a claim on Plaintiff's professional liability policy issued by Defendant. Defendant advised Plaintiff by a letter dated September 8, 1978, that Defendant would defend Plaintiff and Ward in the above mentioned case. Defendant took the position in said letter that Defendant would not be responsible to pay any award of punitive damages as punitive damages are not covered under a contract of insurance under the public policy of Oklahoma and advised Plaintiff about any excess. No other reservation of rights was made by Defendant in said letter. Plaintiff engaged Ben Burdick (Burdick), an attorney, to monitor the case for it as to punitive damages. At no time during discovery, pre-trial or the actual preparation of the case did Defendant make any further reservation of rights. Case No. CIV–78–0752–T was set for jury trial on February 12, 1979. On February 10, 1979, James Foliart (Foliart), the attorney engaged by Defendant to defend Plaintiff, orally advised Burdick that certain policy exclusions existed with regard to fraudulent acts and acts resulting in bodily injury in Plaintiff's professional liability insurance policy. This was confirmed by a letter dated February 11, 1979, and hand-delivered on February 12, 1979. Said letter did not make any specific reservation of rights or deny coverage regarding fraud or bodily injury. However, Defendant's agents at this time did verbally deny all coverage under Plaintiff's policy for actual damages in addition to the earlier written denial of coverage for punitive damages.

On February 14, 1979, the first day of trial, Defendant, Plaintiff, American Family, the Neelys, the Chandlers and their attorneys held settlement negotiations before and after the jury selection process. Foliart strongly recommended settlement by Plaintiff. However, Defendant refused to contribute to any settlement fund. A settlement was reached for the amount of $300,000.00 ($150,000.00 each from Plaintiff and American Family). Foliart considered this settlement figure reasonable and urged settlement. Defendant never objected to the settlement of the case in question or the settlement amount.

The professional liability insurance policy between Plaintiff and Defendant did in fact exclude "any dishonest, fraudulent, or criminal act," and any act causing "bodily injury to, or sickness, disease or death of any person except that caused by assault or battery." Also, the policy did not apply specifically to punitive or exemplary damages.

Defendant takes the position in the instant case that the policy between the parties excludes Defendant from liability as Ward and Plaintiff were charged with fraud by the Complaint in CIV–78–0752–T; that the settlement of said case for $300,000.00 was unreasonable under the circumstances; that the Plaintiff in settling the case did not apportion the settlement damages as between actual and punitive damages; that punitive damages are clearly excluded and a reservation of rights was made as to punitive damages; and that even if Defendant is estopped or had waived its rights as to actual damages, any apportionment now undertaken would be speculative. Therefore, Defendant asserts it owes Plaintiff nothing under the policy between the parties.

Plaintiff asserts that Defendant is estopped by its conduct to claim said policy exclusion for fraud and that Defendant waived its right to claim said policy exclusion. Plaintiff further asserts that the settlement of the case in question was reasonable under the circumstances and that as Defendant participated in the settlement negotiations and had full knowledge there-

of and did not object in any way to the settlement as made, the burden of proof as to apportioning said settlement between covered and non-covered damages falls on the Defendant.

At the outset the Court notes that a possible conflict of law question arises in the instant action as there is a contract of insurance which was negotiated and executed in Georgia and a claim arising under that policy occurring in Oklahoma. As to the interpretation of the policy of insurance the law of Georgia would apply. *Telex Corp. v. Hamilton*, 576 P.2d 767 (Okl.1978). However, there does not appear to be any real issue concerning the interpretation of the policy in question as it is clear on its face. As to the issues of waiver and estoppel, reasonableness of settlement, and apportionment of settlement, all relevant facts on these issues appear to have occurred in Oklahoma. Oklahoma has adopted the most significant contacts rule in determining conflicts of law. *Bruce v. Martin-Marietta Corp.*, 544 F.2d 442 (10th Cir. 1976). Therefore, under the above facts the Court determines that the law of Oklahoma would apply as to all issues other than interpretation of the policy of insurance.

It is clear under the law of Oklahoma that if a liability insurer assumes the defense of an action against its insured, with full knowledge of a ground for forfeiture or non-coverage under the policy, without giving notice to the insured of said insurer's reservation of rights or disclaimer of liability, then the insurer is estopped in an action on the policy from setting up said ground for forfeiture or non-coverage as a defense. *Hartford Accident and Indemnity Company v. Sanford*, 344 F.Supp. 969 (W.D. Okl.1972); *Zahn v. General Insurance Co. of America*, 611 P.2d 645 (Okl.1980); *Security Insurance Company of New Haven v. Greer*, 437 P.2d 243 (Okl.1968); *Insurors Indemnity & Ins. Co. v. Archer*, 208 Okl. 57, 254 P.2d 342 (Okl.1953); *see also* Annot., *Liability insurance: insurer's assumption of or continuation in defense of action brought against the assured as waiver or estoppel as regards defense of noncoverage or other defense existing at time of accident*, 38 A.L.R.2d 1148 (1954).

In the instant case the evidence clearly establishes that Defendant assumed and conducted the defense of the Neely-Chandler action against Plaintiff and its agent Ward. This is established by the September 8, 1978, letter to Plaintiff from Defendant's Oklahoma City Office and by the "Litigation Referral Form" sent by Defendant to the law firm of Foliart, Mills and Niemeyer on August 24, 1978, requesting said firm to undertake the defense of Plaintiff and its agent Ward in the suit by the Chandlers and Neelys. The evidence further establishes that Defendant at all pertinent times had knowledge of its policy exclusions and the grounds for noncoverage therein which Defendant only asserted on the eve of trial. Defendant was the insurer under the policy in question which policy it prepared and Defendant had possession of the policy at all times. Therefore, Defendant must be charged with knowledge of what its policy covered and what it did not cover. Furthermore, Lee Hill, the Oklahoma City Manager of Claims Division for Defendant, testified that the policy between Plaintiff and Defendant was a standard policy for company-wide use and that he did not know of any policy, other than policies covering bonds that provided coverage for fraud. Ken Noble, Defendant's claims representative who handled Plaintiff's claim, said that generally fraud is excluded and he assumed it would be excluded in this case. The Complaint in Case No. CIV–78–0752–T clearly is based only on fraud. Both Hill and Noble testified that they knew fraud was involved in the case. The evidence clearly establishes that Defendant did not reserve its rights as to its fraud exclusion until the eve of trial. The letter of September 8, 1978, only made a reservation of rights as to punitive damages. The fraud exclusion in its policy was not claimed or even mentioned in said letter. Both Hill and Noble testified that no reservation of rights was made by Defendant as to the fraud exclusion in the policy in question. If there was ever a reservation

of rights as to the fraud exclusion made by Defendant it did not come until February 12, 1979 (two days before trial) when Foliart hand-delivered his letter to Burdick and it is not crystal clear that such exclusion was claimed in said letter. But it was verbally claimed by Defendant at this time for the first time. All of the elements of waiver and estoppel are present under the evidence in this case.[2] Therefore, the Court finds and concludes that Defendant waived its rights and is estopped to claim the exclusion in the policy in question for fraud or bodily injury.

█ Defendant asserts that Plaintiff must prove prejudice before estoppel can be asserted. This is true. Prejudice to an insured is conclusively presumed where an insurer assumes the defense of an action and denies liability on the eve of trial. *See generally Hartford Accident and Indemnity Company v. Sanford, supra.* Moreover, there is strong and convincing evidence before the Court which shows that Plaintiff was prejudiced by Defendant's action. Burdick testified that he would have taken a far more active role in the defense of the case and would have started settlement negotiations much earlier if he had known that the Defendant planned to disclaim liability for fraud or actual damages. In addition Foliart complained by letter to Defendant that he had spent much time dealing with the coverage questions rather than preparing for the defense of the case. As it turned out, the realization that he would have to take an active role in the trial and needed to prepare for trial was placed on Burdick less than two days before the trial was to begin. Up until this time Plaintiff had only retained Burdick to monitor the case. The Court finds the Plaintiff was prejudiced by Defendant's conduct in failing to assert its policy provision excluding coverage for fraud until the eve of trial.

█ Turning to the second issue of whether or not the settlement reached was reasonable, it is clear that an insured may settle a claim without the consent of the insurer if the insurer denies liability. *Franklin v. Oklahoma City Abstract & Title Co.,* 584 F.2d 964 (10th Cir.1978). In the instant case the attorney (Foliart) hired by Defendant to defend Plaintiff was urging settlement. The Defendant was aware of the settlement negotiations and had a representative or representatives present during negotiations. Defendant never questioned the settlement or objected to it in any way. The only question remaining is whether settlement of the case for $300,-000.00 was reasonable. *See Traders & General Ins. Co. v. Rudco Oil & Gas Co.,* 129 F.2d 621 (10th Cir.1942).

█ The evidence in this case shows and the Court finds that the settlement made was reasonable. Foliart, counsel employed by Defendant to defend the case and who had made the trial preparations to defend the case, strongly urged settlement of the case. He had evaluated the case for settlement purposes at between $500,000 and $600,000. He voiced no objection to the settlement which was made. The case was ready to be tried by Defendant's attorney when Defendant on the eve of the trial for the first time disclaimed any liability under its policy for actual damages resulting from fraudulent acts. Both in their Complaint and settlement of the case the demands of Chandler/Neely were extremely high. Their attorney was considered to be a capable trial attorney. American Family could have won the case on the basis it made no misrepresentations to Chandler/Neely. However, American Family also was favorable to effecting the settlement as made for which it would contribute one-half thereof. The type of damages sued for by Chandler/Neely appeared to be recoverable under Oklahoma law. The conduct of Plaintiff's agent, Ward, could have been found to be outrageous and thus support the claim made by Chandler/Neely for actual dam-

---

2. Waiver is the intentional relinquishment of a known right while estoppel arises when a party is misled to his prejudice by another party. *A.R. Steiger v. Commerce Acceptance of Oklahoma City, Inc.,* 455 P.2d 81 (Okl.1969); *Continental Ins. Co. of New York v. Portwood,* 184 Okla. 22, 84 P.2d 435 (Okl.1938).

ages for mental anguish in the absence of bodily injury. The trial judge had not ruled on this possibility though requested to do so.

Punitive damages were recoverable under Oklahoma law for actions based on fraud. A recent $10,000,000.00 punitive damage award had been made by a jury of this Court. An insurance company and an insurance adjusting company were both open party defendants in this case. Plaintiff's attorney employed by Plaintiff to only monitor the case was not in good position to either try the case or give significant assistance to the attorney hired by Defendant to try the case for Plaintiff. Plaintiff had a high potential exposure for damages. Foliart had announced that Ward would make a poor witness and Hollingsed would be a better witness than Ward. They had both been deposed. It was undisputed that Ward had indeed given false policy limits to Chandler/Neely.

Under the foregoing circumstances as they appeared on the eve of trial, the Court is of the opinion and finds and concludes that the settlement effected whereby Plaintiff contributed $150,000.00 was a reasonable settlement.

Defendant finally contends that the burden of apportioning damages between covered and non-covered losses is on the insured and, in the absence of an apportionment, the insured should be denied recovery. *Winn v. Continental Casualty Co.,* 494 S.W.2d 601 (Tex.Civ.App.1973). Defendant also cites *Smith v. Governmental Employees Insurance Co.,* 558 P.2d 1160 (Okl.1976). The *Smith* case deals with a clause which provides that the insurer will not be liable until insurance afforded by other companies is exhausted. In that context the Oklahoma Supreme Court put the burden on the insured to prove that any other insurance had been exhausted. The *Smith* case does not deal with apportionment between covered and non-covered damages, and thus is not applicable to the instant case.

In this connection, Plaintiff contends that although the burden of apportioning damages between covered and non-covered items was initially on Plaintiff, the burden of proof shifted to Defendant as Defendant knew of the settlement negotiations, had a representative present, failed to inform Plaintiff of the necessity of apportioning damages, and failed to object to the settlement, and therefore Defendant cannot escape liability. *Duke v. Hoch,* 468 F.2d 973 (5th Cir.1972). In the *Duke* case the court ruled that the insurer had a duty to defend and the right to control litigation; that in view of this duty and right the insurer had a duty to inform the insured of the possible consequences of a general verdict for damages when there was disputed coverage as to certain issues; that if the insurer failed in this duty then the burden of apportioning between covered and non-covered damages shifted to the insurer, for to allow the insurer to rely on such a technical defense would give the insurer an easy opportunity to prejudice the rights of the insured by just allowing a general verdict and then requiring the insured to prove which damages were covered; and that if the insurer failed in this duty and could not produce evidence of proper apportionment, then the task of apportionment fell to the trial court to establish a logical allocation as best it can. *Duke v. Hoch, supra,* at 984.

Although the instant case deals with the failure to apportion a settlement paid rather than failure to require apportionment of a general verdict, the Court concludes that the general principles set forth in the *Duke* case should be applied in this case. The Defendant as insurer undertook the defense of the Chandler/Neely action and had the right to control the litigation. There was clearly a dispute between the parties as to coverage for actual damages. In this regard, a letter was furnished Plaintiff by Defendant recognizing and reserving rights about this disputed coverage. In the Chandler/Neely case Defendant herein had every opportunity to request an apportionment of damages in the settlement process. Foliart, the attorney hired by Defendant to defend Plaintiff in the Chandler/Neely action, had prepared the case for trial, had urged settlement, stood

ready to defend the case if the same was not settled, knew of the settlement negotiations and participated to some extent in the same. Defendant knew of the agreed settlement figure when the same was reached; knew it exceeded the claim for actual damages yet requested no apportionment of the settlement figure. Plaintiff did not settle the case or enter into settlement negotiations until it learned from Defendant shortly before the case was to be tried that Defendant was denying *all* liability in the case. Defendant under these circumstances should have requested an apportionment of the settlement between actual and punitive damages. Upon deciding that the Court would follow the principles set out in *Duke v. Hoch, supra,* the Court set the instant case for an evidentiary hearing on the apportionment issue on May 27, 1981.

At said hearing neither party was able to present any evidence that an apportionment of the settlement between punitive and actual damages was made or even discussed in any way by any one during the settlement negotiations. Also, neither party was able to present the Court with a logical method of accomplishing such an apportionment. Accordingly, under the authority of *Duke v. Hoch, supra,* this Court must attempt to make the apportionment in a logical manner.

In this connection the Court finds and concludes that a logical apportionment of the settlement money paid by Plaintiff in the amount of $150,000.00 would be $75,-000.00 for actual damages and $75,000.00 for punitive damages. In the judgment of the Court this apportionment, though necessarily arbitrary, is the most logical under the circumstances. The total settlement paid, $300,000.00, was in excess of the actual damages sought by Chandler/Neely and therefore some of the settlement money paid had to be for punitive damages. The testimony indicates that the Defendants and their attorneys in the Chandler/Neely litigation were more concerned about punitive damage exposure than actual damage exposure. However, at the time of settlement Plaintiff's claims for actual damages were viable claims. As there had to be

some application of the settlement money to both actual and punitive damages, the Court deems an equal division to be logical and equitable under the circumstances of this case.

The policy in question herein provided for a $5,000.00 deductible which, when subtracted from the $75,000.00 actual damages for which Defendant has been found liable to Plaintiff, leaves $70,000.00 due Plaintiff by Defendant under the professional liability policy between the parties.

For the foregoing reasons the Court finds and concludes that Plaintiff is entitled to recover $70,000.00 under Plaintiff's professional liability insurance policy with Defendant. Therefore, the Court determines that judgment should be entered in favor of Plaintiff and against Defendant in the amount of $70,000.00. As the Court must consider Plaintiff's claims for attorney fees in this matter judgment will be withheld at this time.

### ON ATTORNEY'S FEES

This action came on for nonjury trial and the Court issued a Memorandum Opinion on August 6, 1981. The Court reserved the issue of attorney's fees in said Memorandum Opinion. In that connection, the Court had a hearing on September 2, 1981. This action is now ready for decision on Plaintiff's claim for attorney's fees.

Plaintiff claims two separate attorney fees. One in the amount of $8,163.00 for work performed by Plaintiff's attorneys in the Chandler/Neely litigation after Defendant questioned whether Plaintiff was covered for actual damages by its adjustor's liability policy issued to Plaintiff by Defendant. The Chandler/Neely litigation and said dispute over coverage gave rise to the instant action wherein Plaintiff makes its claim for a second attorney fee.

Plaintiff contends that it is entitled to an attorney fee for work performed in the Chandler/Neely litigation on two grounds. First, that the adjustor's insurance policy issued by Defendant was an indemnity contract and therefore Plaintiff should receive

an attorney fee to make it whole. Second, Plaintiff asserts that Defendant acted in bad faith in handling Plaintiff's claim which would entitle Plaintiff to an attorney fee. *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okl.1977).

Plaintiff claims an attorney fee in the instant case based upon an Oklahoma Statute, 36 Okla.Stat.Supp. 1977 § 3629 B and upon bad faith grounds.

## CHANDLER/NEELY CLAIM

■ Plaintiff's indemnity contract claim is based upon the general rule that unless an indemnity contract otherwise provides, it indemnifies the contracting party against all costs including attorney fees. *See* 15 Okla.Stat. 1971 § 427. This contention in this case is without merit and must be denied. The insurance contract between the parties specifically provided that Defendant would provide a defense to Plaintiff for professional liability suits against Plaintiff regardless of the coverage provisions of the policy. Hence, by contract Defendant had separate duties to defend and to pay. The evidence shows without dispute that Defendant undertook and then stood ready at all times to defend the Chandler/Neely litigation regardless of the coverage questions. Defendant hired an attorney, James Foliart, to defend Plaintiff in the Chandler/Neely case. Foliart was ready, willing and able to afford such defense until the case was settled. The actions of Plaintiff's own attorneys in preparing for trial was therefore duplicative, was not covered by indemnity and should be borne by Plaintiff. When an insurer agrees to defend the insured at a trial and stands ready to do so, the insured cannot collect attorney fees paid to a private attorney to assist in the litigation. *Boling v. Ashbridge*, 111 Okl. 66, 238 P. 421 (1925).

As Plaintiff had liability in the Chandler/Neely case in excess of insurance coverage with Defendant at all times and thus had a direct interest in settling the case by compromise, Plaintiff should also bear its legal expense exerted in this regard. Such efforts by Plaintiff were not covered by indemnity.

## CLAIM FOR THIS LITIGATION

■ As to Plaintiff's claim for an attorney fee based upon 36 Okla.Stat.Supp. 1977 § 3629 B, said statute as it relates to providing for an attorney fee has been declared in violation of the Oklahoma Constitution by Judge Ralph G. Thompson of this Court. *First National Bank and Trust Company of El Reno v. Transamerica Insurance Company*, CIV–79–1358–T (W.D.Okl. October 9, 1981). Judge Thompson found that § 3629 B did not mention attorney fees in the title to the Act as required by Art. 5, § 57 of the Oklahoma Constitution and for such reason said statute contravenes the Oklahoma Constitution as to the provision for an attorney fee. Judge Thompson's analysis of Oklahoma law is believed to be correct and should be followed in the instant case. Accordingly, attorney fees cannot be awarded Plaintiff under 36 Okla.Stat.Supp. 1977 § 3629 B.

## BAD FAITH

■ As to Plaintiff's claim for attorney fees under the bad faith doctrine in both instances, Plaintiff must prove that Defendant acted in bad faith, wantonly or for an oppressive reason in order for the trial court to award an attorney fee. *Christian v. American Home Assurance Co., supra.* Even if Plaintiff proves such bad faith, an award of an attorney fee is discretionary with the Court. *Christian v. American Home Assurance Co., supra.* In this connection, the Court finds and concludes that Plaintiff has failed to prove the requisite bad faith on Defendant's part as to either claim and therefore Plaintiff is not entitled to an attorney fee on bad faith grounds as to either claim. Defendant's conduct may be subject to criticism but it falls far short of amounting to bad faith.

In view of the foregoing, the Court finds and concludes that Plaintiff is not entitled to an attorney fee on either claim made herein. Accordingly, Plaintiff's claims for attorney fees should each be denied. Plaintiff is directed to prepare a judgment in

accordance with the foregoing and with the Memorandum Opinion dated August 6, 1981 and submit said judgment to Defendant for approval and then submit same to this Court within ten (10) days of this date.