MEDMARC CASUALTY INSURANCE COMPANY *v.*
FOREST HEALTHCARE, INC., Regional Management, Inc.,
The Arkansas Property & Casualty Guaranty Fund,
and the Estate of Eula Thurman, Deceased

03-1318                                    199 S.W.3d 58

Supreme Court of Arkansas
Opinion delivered December 2, 2004

[Rehearing denied January 13, 2005.]

*Gramovot & Takacs, P.L.*, by: *Larry I. Gramovot*; and *Watts, Donovan & Tilley, P.A.*, by: *David M. Donovan*, for appellant.

*Jim Bob Steel*; and *Latham & Burwell, PLLC*, by: *William Larry Latham, G. Todd Burwell*, and *Whit Waide*, for appellee.

*Wilkes & McHugh, P.A.*, by: *Brian G. Brooks*, for appellee Estate of Eula Thurman.

R. OBERT L. BROWN, Justice. The appellant, MedMarc Casualty Insurance Company, appeals from an order granting partial summary judgment to the appellees, Forest Healthcare, Inc., and Regional Management, Inc. ("Forest and Regional"), and dismissing MedMarc's claims against The Arkansas Property & Casualty Guaranty Fund and the Estate of Eula Thurman. At issue was MedMarc's action seeking a declaratory judgment as to the rights and obligations of the parties with respect to a judgment entered against Forest and Regional in a nursing home-negligence suit. MedMarc asserts two points on appeal: (1) whether it had any obligation under its policy and the applicable law to pay any portion of the unallocated verdict; and (2) if it did have any obligation, whether the trial court erred in arbitrarily allocating twenty-five percent of the judgment to MedMarc's policy period. We reverse and remand for a proper allocation.

Eula Thurman was a resident at Forest Healthcare, a nursing home, from December 20, 1997, until September 20, 1999.

PHICO Insurance Company provided insurance coverage for Forest and Regional from October 17, 1997, to April 1, 1999,[1] while MedMarc provided insurance coverage for Forest and Regional from April 1, 1999, to April 1, 2000.[2] The MedMarc policy provided both hospital professional liability coverage and commercial general liability coverage. After her death on September 20, 1999, Ms. Thurman's estate filed a lawsuit alleging negligence, medical malpractice, wrongful death, and breach of contract against Forest and Regional.

During the trial in the earlier Thurman case, counsel for Forest and Regional had requested a jury instruction that would have allowed the jury to apportion damages between the two carriers (MedMarc and PHICO) based on the dates of the various insurance policy periods. Counsel for the Thurman estate objected to the instruction, and the trial court refused to give it on grounds that it would confuse the jury. Following the jury trial, Ms. Thurman's estate was awarded $350,000 in damages for ordinary negligence, $500,000 in damages for medical malpractice, and $5,000 in damages for breach of contract. On March 27, 2002, the final judgment was filed by the circuit court. Though an appeal was taken by both sides, both parties later dismissed the respective appeals.

On January 15, 2003, MedMarc filed its complaint for declaratory judgment which is the subject of this appeal. In it, MedMarc stated that Forest and Regional had requested that it pay all or a portion of the final judgment in the Thurman case. It claimed that it was incumbent on Forest and Regional to prove coverage under the policy, and that because no allocation was made by the jury, its insurance policy provided no coverage for any part of the judgment. It alternatively asserted that a retrospective allocation be made so that it would know its current liability under the insurance contract.

On June 18, 2003, Forest and Regional filed a motion for partial summary judgment and allocation. In their motion, Forest

---

[1] In February of 2002, PHICO Insurance Company was placed in liquidation by the Commonwealth Court of Pennsylvania. Therefore, pursuant to Ark. Code Ann. § 23-90-101 et seq., (Repl. 2004), the Arkansas Property & Casualty Guaranty Fund has assumed certain of PHICO's responsibilities.

[2] A review of the record reveals that during the period of MedMarc's coverage, Ms. Thurman remained a resident of Forest but was admitted for in-patient treatment at area hospitals on several occasions.

and Regional claimed that at least some of the jury's verdict in the Thurman case was covered under the MedMarc policy. They further contended that MedMarc carried the burden of proving precisely which portion of the Thurman verdict should be allocated to which insurer. Forest and Regional requested that MedMarc be allocated liability for thirty percent of the judgment.

On July 22, 2003, MedMarc filed its response and cross-motion for summary judgment and allocation. In its response, MedMarc asserted that Forest and Regional failed to prove that any of the bases for the Thurman judgment were covered by the MedMarc policy. With respect to allocation, MedMarc contended that Forest and Regional had the ultimate burden of proving exactly what portion of the verdict was for damages covered by its policy. In an alternative argument, MedMarc maintained that should the circuit court make a retrospective allocation of the verdict, it should allocate liability for no more than five percent of the damages to MedMarc. In its motion for summary judgment, MedMarc contended that it had no obligation to pay any of the Thurman judgment, because Forest and Regional could not establish coverage under its policy.

On August 13, 2003, the circuit court entered its order granting Forest's and Regional's motion for partial summary judgment and denying MedMarc's motion for summary judgment. The circuit court concluded that it was proper to apportion the jury's verdict in the Thurman case and that twenty-five percent of the verdict should be allocated to MedMarc.

On appeal, MedMarc first argues that Forest and Regional, as the insureds, have the burden of proving coverage and the burden of allocating the verdict between damages covered under the policy and those that are not. MedMarc claims that where the insured is unable to meet that burden, the insurer is not obligated to pay any amount under the policy. Forest and Regional respond that under MedMarc's policy language, MedMarc clearly has partial coverage for the judgment. As to the burden of proof regarding allocation, Forest and Regional urge that MedMarc carries this burden and that testimony from the Thurman trial supports the circuit court's allocation of liability of damages to MedMarc of twenty-five percent.

We have previously set forth our standard of review for cases in which summary judgment has been granted:

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Jackson v. City of Blytheville Civ. Serv. Comm'n*, 345 Ark. 56, 43 S.W.3d 748 (2001). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999); *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998); *Angle v. Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997). After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable persons might reach different conclusions from those undisputed facts. *George, supra.*

*Allen v. Allison*, 356 Ark. 403, 412, 155 S.W.3d 682, 689 (2004).

■ We turn then to the first issue which is whether any part of the Thurman damages fall within MedMarc policy's coverage. Pursuant to the language of the MedMarc policies, coverage was provided for injuries that occurred during the policy period. The policy period was from April 1, 1999 until April 1, 2000. Based on the policy language, it appears that MedMarc is *potentially* liable to Forest and Regional for injuries that Ms. Thurman sustained during the time that she resided at Forest during this policy period. It is for the circuit court to determine precisely which injuries fall within the MedMarc coverage.

Thus, the issue becomes to what extent is MedMarc liable for the damages awarded in the Thurman case based upon the time limits of the policy's coverage and the injuries sustained therein. While MedMarc is correct that in most instances the burden is on the insured to prove allocation of liability between insurance carriers, that burden may be shifted to the insurer. Allan D. Windt, in his treatise, *Insurance Claims & Disputes*, explains:

Assuming that it is proved that a portion of the judgment is covered by the policy and a portion is not, the next question that arises is which party should have the burden of allocating the verdict, in order to ascertain the amount of the damages for which the insurer is responsible. Most courts have held that the burden is on the insured. An exception, however, should be made to that rule in those cases in which the circumstances surrounding the defense of the underlying action were such that the insurer was obligated to seek an allocated verdict or advise the insured of the need for one, but failed to fulfill that obligation. In that event, the burden of persuasion should be placed on the insurer.

Allan D. Windt, *Insurance Claims & Disputes* § 6:27 (4th ed. 2001) (footnotes omitted).

■ Here, a review of the record reveals that it was Med-Marc that provided Forest and Regional with a defense and hired lawyers for them in the Thurman case. According to an affidavit filed by Eugene Zuber, then-president of Forest and then-CEO and president of Regional, "MedMarc had the right to and did control the defense in the Thurman case." This control also continued as to the ensuing appeal. Mr. Zuber adds in a supplemental affidavit that "[i]nsurance defense counsel contacted me and . . . advised that Forest and Regional should dismiss their cross-appeal" from the Thurman case. Mr. Zuber added that it was MedMarc that was controlling this process.

We conclude that MedMarc indeed assumed the burden of apportioning the judgment once it took over the defense in the Thurman trial. The Tenth Circuit Court of Appeals has made this abundantly clear:

As an initial matter, we note that an insurer who undertakes the defense of a suit against its insured must meet a high standard of conduct. *Duke v. Hoch*, 468 F.2d 973, 978 (5th Cir. 1972); *Gay & Taylor, Inc. v. St. Paul Fire & Marine Ins. Co.*, 550 F. Supp. 710, 714-16 (W.D. Okla. 1981). The right to control the litigation carries with it certain duties. *Traders & Gen. Ins. Co. v. Rudco Oil & Gas Co.*, 129 F.2d 621, 627 (10th Cir. 1942). One of these is the duty not to prejudice the insured's rights by failing to request special interrogatories or a special verdict in order to clarify coverage of damages. *See Gay & Taylor*, 550 F. Supp. at 716. The reason for this is that when grounds of liability are asserted, some of which are covered by insurance and some of which are not, a conflict of interest arises

between the insurer and the insured. If the burden of apportioning damages between covered and non-covered were to rest on the insured, who is not in control of the defense, the insurer could obtain for itself an escape from responsibility merely by failing to request a special verdict or special interrogatories. *Duke*, 468 F.2d at 979. The insurer is in the best position to see to it that the damages are allocated; therefore, it should be given the incentive to do so.

*Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1498-99 (10th Cir. 1994).

Added to this is the point that when the insurance carrier assumes the defense of its insured, it is obligated to appeal when there are reasonable grounds to believe that the insured's interests will be furthered. *See* Allan D. Windt, *Insurance Claims & Disputes* § 4:17 (4th ed. 2001). As already mentioned, it was MedMarc who made the decision to drop the appeal in the Thurman case.

We note that MedMarc's counsel for Forest and Regional did request an instruction from the trial judge to apportion the verdict. However, the Thurman estate opposed that instruction, and the circuit judge refused to give it:

> DEFENSE COUNSEL: We have proffered an instruction. I don't think we've talked about it on the issue of dividing the — letting the jury apportion damages as between the time period for the [PHICO] Insurance Policy. You remember, Your Honor, that they had gone into liquidation, and the Arkansas Guaranty Funds has taken that over and so for the guaranty fund to know how much there is, it would be to find that the jury apportion the amount of damages occurring during the [PHICO] policy period which lasted up until April 1 of 1999, and we have tendered an instruction which would allow the jury to apportion those damages between — that occurred before April 1 of '99 and after April 1 of '99, during the time that Mrs. Thurman was in the facility.

> PLAINTIFF'S COUNSEL: Your Honor, our position on that, number one, it would be entirely inappropriate. This is an issue that's not before the jury. There's no evidence of these policies before the jury, and it would be confusing and make no sense to them when they get this

time period breakdown. Of bigger concern is the con-
flict that this raises between the insurance company
who — and the insured, the defendant, who is — who
these attorneys are supposed to be representing.

THE COURT: I'm not going to give that one. It's too
confusing. You can make your proffer.

MedMarc's counsel then proffered, on behalf of Regional and Forest,
as Defendant's Exhibit 35, an interrogatory to apportion damages
between MedMarc and PHICO based on time of coverage. The issue
of the failure to give the apportionment instruction was not appealed,
but, again, that was MedMarc's decision.

■ While the circuit court did allocate the judgment in
this case, it provided no basis for its apportioning to MedMarc
twenty-five percent of the liability for the Thurman judgment. We
believe that providing the reasoning and basis for the particular
allocation in the form of findings of fact and conclusions of law is
essential. *See, e.g., Little Rock Wastewater Util. v. Larry Moyer
Trucking Inc.*, 321 Ark. 303, 902 S.W.2d 760 (1995) (remanded for
reconsideration where order gave no explanation for application of
Rule 11 sanctions). A proper allocation in this case, while perhaps
difficult, is certainly not impossible. Indeed, other courts have said
it can be done. *See, e.g., Duke v. Hoch*, 468 F.2d 973, 984 (5th Cir.
1972) (finding that if allocation of damages is required between
what is covered by insurance and what is not, trial judge on
remand "will be in the position of establishing as best he can the
allocation which the jury would have made had it been tendered
the opportunity to do so" and that if impossible for meaningful
allocation to be made based on the transcript, additional evidence
should be introduced and rebutted by the parties). Because we
conclude that a proper allocation is necessary and because the
circuit court provided no reason for allocating twenty-five percent
of the liability to MedMarc, we reverse and remand the matter
with directions for the circuit court to proceed with allocation in
accordance with this opinion.

Reversed and remanded.

GLAZE, J., concurs.

THORNTON, J., dissents.

RAY THORNTON, Justice, dissenting. Because I believe
that Forest and Regional, rather than Medmarc, had the

burden of allocating the verdict from the Thurman case, and because they failed to meet this burden, I must respectfully dissent.

When a portion of a judgment is covered by an insurance policy and a portion of a judgment is not covered by an insurance policy, the insured bears the burden of allocating the judgment. *See Morris v. Western States Mutual Automobile Insurance Co.*, 268 F.2d 790 (7th Cir. 1959); *General Accident Fire & Life Assurance Corp. v. Clark*, 34 F.2d 833 (9th Cir. 1929); *Aetna Insurance Co. v. Waco Scaffold & Shoring Co.*, 370 So.2d 1149 (Fla. Dist. Ct. App. 1978); Allan D. Windt, *Insurance Claims and Disputes* §§ 6:26, 6:27 (4th ed. 2004); 14 Couch, Lee R. Russ, *Couch on Insurance* § 205:79 (3rd ed. 2004).

The majority asserts that by providing legal representation to Forest and Regional during the Thurman case, Medmarc assumed the burden of allocating the judgment. This contention is misplaced. In support of this position, the majority opinion cites Allan Windt's insurance treatise, which provides:

> Most courts have held that the burden [of allocating the verdict] is on the insured. An exception, however, should be made to that rule in those cases in which the circumstances surrounding the defense of the underlying action were such that the insurer was obligated to seek an allocated verdict or advise the insured of the need for one, *but failed to fulfill that obligation.* In that event, the burden of persuasion should be placed on the insurer.

Allan D. Windt, Insurance Claims & Disputes § 6:27 (4th ed. 2001) (emphasis added).

Relying on the forgoing legal principles, I would conclude that Medmarc did not fail to fulfil its obligations to Forest and Regional. Medmarc did provide representation for Forest and Regional during the Thurman trial. During its representation, Medmarc adequately notified Forest and Regional of their need for an apportioned verdict. Specifically, Medmarc disclosed to Forest and Regional the need to allocate the judgment in a letter from Jim Martin, president of Uni-Ter Claims Services Corporation, to Roger Glasglow, Forest and Regional's attorney. In the letter, Mr. Martin wrote, "[I]t is quite important that any verdict form used at trial requires the jury to allocate damages awarded between injuries, which took place within the Medmarc policy period, and those, which took place outside of that period . . . Medmarc will not be responsible for injuries, which took place

outside of its policy period."[1] Additionally, Medmarc adequately attempted to receive an allocated verdict by requesting an apportionment instruction. Because Medmarc informed Forest and Regional of the need for an apportioned verdict, and because Medmarc requested a jury instruction that would have allowed for the apportionment of the judgment, Medmarc fulfilled its obligations to Forest and Regional. Accordingly, the burden of apportioning the verdict did not shift from Forest and Regional to Medmarc.

Because the burden of allocating the judgment from the Thurman case rested on Forest and Regional, and because Forest and Regional failed to meet this burden, I would conclude that the trial court erred when it granted Forest and Regional's motion for partial summary judgment and when it allocated twenty-five percent of the Thurman verdict to the Medmarc policy period. Accordingly, I would reverse and remand this case to the trial court. Upon remand, I would instruct the trial court to enter an order granting summary judgment in favor of Medmarc. *See Wilson v. McDaniel*, 247 Ark. 1036, 499 S.W.2d 944 (1970) (explaining that we can review the denial of a motion for summary judgment in conjunction with our consideration of an order in which a cross-motion for summary judgment was granted).

I respectfully dissent.

---

[1] It should be noted that while Medmarc's policy period extended from April 1, 1999, until April 1, 2000, Mrs. Thurman resided at Forest for only forty days during that time.