[Cite as *World Harvest Church v. Grange Mut. Cas. Co.*, 2013-Ohio-5707.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| World Harvest Church, | : | |
| Plaintiff-Appellee/<br>Cross-Appellant, | : | |
| | : | No. 13AP-290 |
| v. | | (C.P.C. No. 09CV-11327) |
| | : | |
| Grange Mutual Casualty Company, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellant/<br>Cross-Appellee. | : | |

# D E C I S I O N

### Rendered on December 24, 2013

*Robert P. Rutter*, for appellee/cross-appellant.

*Gallagher, Gams, Pryor, Tallan & Littrell, L.L.P.*, and *James R. Gallagher*; *Tucker Ellis, LLP*, and *Irene C. Keyse-Walker*, for appellant/cross-appellee.

APPEAL from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1} Defendant-appellant/cross-appellee, Grange Mutual Casualty Company ("Grange"), and plaintiff-appellee/cross-appellant, World Harvest Church ("WHC"), appeal from a judgment entered by the Franklin County Court of Common Pleas holding that Grange must indemnify WHC for $1,472,677, representing $549,100 in compensatory damages, $693,861 in attorney fees, and $229,716 in postjudgment interest, plus statutory interest, and that Grange is not obligated to indemnify WHC for punitive damages awarded in a prior case. Because we find that Grange is not obligated to indemnify WHC for that portion of the compensatory damage award for which WHC was found to be directly liable, we reverse that portion of the judgment as well as the part of the postjudgment interest award attributable to these damages. Finding no error in the

remainder of the judgment, including the denial of coverage for punitive damages, we affirm that portion of the judgment.

## I. BACKGROUND[1]

{¶ 2}   On May 30, 2006, Michael and Lacey Faieta and their minor son, A.F., filed a complaint alleging that Richard Vaughan, an employee of the prepatory school operated by WHC, physically abused A.F. in January 2006 while the two and one-half-year-old boy was in Vaughan's care in WHC's daycare program.  According to the Faietas, Vaughan struck and severely beat A.F. with an object that left plainly visible marks, cuts, and contusions on the child's back, buttocks, and thighs.  The Faietas raised claims of battery and intentional infliction of emotional distress ("IIED") against Vaughan and claims of negligent supervision and IIED against WHC.

{¶ 3}   On October 18, 2007, after a seven-day trial, the jury returned general verdicts in favor of the Faietas against both Vaughan and WHC.  The jury awarded the Faietas compensatory damages of $134,865 and punitive damages of $100,000 against Vaughan, and compensatory damages of $764,235 and punitive damages of $5,000,000 against WHC.  The jury also found that the Faietas were entitled to attorney fees against WHC.

{¶ 4}   The jury interrogatory forms indicated they found, by a preponderance of the evidence, that: (1) Vaughan committed a battery against A.F. that was the proximate cause of damages to the Faietas (Interrogatory 1); (2) Vaughan and/or WHC intentionally inflicted serious emotional distress on the Faietas that proximately caused damages to them (Interrogatory 2); and (3) WHC was negligent in supervising its employee Vaughan, and its negligent supervision was the proximate cause of damages to the Faietas (Interrogatory 3).

{¶ 5}   After the trial, on May 6, 2008, the trial court denied the parties' post-trial motions, but after applying statutory caps to the damage awards, reduced the noneconomic compensatory damages award by $350,000 and limited the punitive damages award to $1,628,470.  *Faieta v. World Harvest Church*, 10th Dist. No. 08AP-527, 2008-Ohio-6959, ¶ 4.  The trial court further determined that a statute exempted Vaughan from paying the $100,000 in punitive damages awarded against him, and the

---

[1] Some of these preliminary facts are taken from this court's opinion in *Faieta v. World Harvest Church*, 10th Dist. No. 08AP-527, 2008-Ohio-6959, ¶ 1-4, 8.

court assessed all the punitive damages against WHC under its joint and several liability. *Id.* The trial court ordered WHC to pay the Faietas attorney fees in the amount of $693,861.87. *Id.*

{¶ 6} On May 23, 2008, the trial court entered a final judgment of $2,871,431.87 in favor of the Faietas. WHC was held to be solely liable for $2,789,066.87 of the judgment, and Vaughan was held to be primarily liable, and WHC secondarily liable, for the remaining $82,365 in compensatory damages against Vaughan.

{¶ 7} WHC and Vaughan appealed, and on December 31, 2008, this court affirmed the judgment of the trial court. *Id.*

{¶ 8} The Faietas then settled the case with interest in the total amount of $3,101,147. After Grange refused to indemnify WHC for any portion of the judgment pursuant to its insurance policies, WHC, on July 29, 2009, filed a complaint in the Franklin County Court of Common Pleas for indemnification against Grange. WHC sought, among other things, a declaration that it is entitled to payment from Grange of all or some of the amount it paid to resolve the Faietas' case. Following its answer, Grange filed a motion to dismiss or, in the alternative, for judgment on the pleadings. The common pleas court denied the motion. WHC filed a motion for partial summary judgment and declaratory relief on the issue of Grange's duty to indemnify, i.e., that Grange is contractually obligated by its policy language to pay the entire amount of the judgment. Grange filed a motion for summary judgment on all of WHC's claims and sought dismissal of the case.

{¶ 9} On December 16, 2012, the common pleas court issued a decision granting and denying in part both motions for summary judgment. The trial court determined that the $3,101,147 award could be roughly separated into $549,100 in compensatory damages, $1,628,000 in punitive damages, $694,000 in attorney fees, and $230,000 in postjudgment interest. The trial court determined that Grange is obligated to provide coverage for and reimburse WHC for the entire compensatory damages award of $549,100, Grange is under no duty to provide coverage for the punitive damages award, and Grange is obligated to provide coverage to WHC for the attorney fees and postjudgment interest awards. The trial court determined there remained a genuine issue of material fact on WHC's bad-faith claim against Grange.

{¶ 10} On March 11, 2013, the trial court entered judgment in favor of WHC against Grange in the amount of $1,472,677 plus statutory interest, which represents the compensatory award of $549,100, the attorney fees award of $693,861, and the postjudgment interest award of $229,716. The trial court rendered judgment in favor of Grange and against WHC on the issue of indemnification for the punitive damages award of $1,528,470 directly against WHC and $100,000 against Vaughan for which WHC is secondarily liable. The trial court determined, pursuant to Civ.R. 54(B), that the judgment fully resolved the declaratory judgment claim, and there was no just reason for delay of an appeal from the judgment.

{¶ 11} Grange filed a timely appeal, and WHC filed a timely cross-appeal.

## II.  ASSIGNMENTS OF ERROR

{¶ 12} In Grange's appeal, it assigns the following error:

> THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT GRANGE'S MOTION FOR SUMMARY JUDGMENT IN ITS ENTIRETY; BY GRANTING SUMMARY JUDGMENT IN FAVOR OF WHC; AND, BY ENTERING A DECLARATORY JUDGMENT OBLIGATING GRANGE TO INDEMNIFY WHC FOR DAMAGES, INTEREST AND ATTORNEY FEES.

{¶ 13} In WHC's cross-appeal, it assigns the following errors:

> Assignment of Error Number One: The trial court erred in holding that Grange was not obligated to indemnify WHC for the $1,528,470 in punitive damages awarded directly against WHC.

> Assignment of Error Number Two: The trial court erred in holding that Grange was not obligated to indemnify WHC for the $100,000 in punitive damages awarded directly against Vaughan and secondarily against WHC.

## III.  STANDARD OF REVIEW AND GENERAL PRINCIPLES

{¶ 14} Appellate courts apply the de novo standard of review to a decision granting or denying summary judgment based on interpretation of an insurance contract. *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 12. Summary judgment is appropriate when the party moving for summary judgment establishes that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion, and that

conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, ¶ 24; *Miller v. J.B. Hunt Transport, Inc.*, 10th Dist. No. 13AP-162, 2013-Ohio-3892, ¶ 20.

{¶ 15} The meaning of an insurance policy is gathered from a consideration of all its parts, and the intent of the parties is presumed to be reflected by the language used. *Marusa v. Erie Ins. Co.*, 136 Ohio St.3d 118, 2013-Ohio-1957, ¶ 8. In the absence of an explicit contractual definition, we will construe words and phrases contained in an insurance policy in accordance with their plain and ordinary meaning. *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718, ¶ 17. Ambiguities in the policy are construed strictly against the insurer and liberally in favor of the insured. *Id.* at ¶ 18. The court must thus adopt any reasonable construction that results in coverage for the insured. *Royal Paper Stock Co. v. Robinson*, 10th Dist. No. 12AP-455, 2013-Ohio-1206, ¶ 29.

## IV. ANALYSIS

### A. *Grange's Appeal*

{¶ 16} In Grange's sole assignment of error, it claims the trial court erred by failing to grant its motion for summary judgment in its entirety, by granting summary judgment in favor of WHC, and by entering a declaratory judgment obligating Grange to indemnify WHC for damages, interest, and attorney fees.

#### 1. Burden of Proof

{¶ 17} The trial court determined that for the three causes of action on which the jury entered a general verdict in favor of the Faietas—battery, IIED, and negligent supervision—Grange "bears the burden of proof to demonstrate that coverage does not apply to each of the causes of action and will need to establish exclusions for the other portions of the award, if any," and that because "it is not possible to allocate the proportions of the general compensatory verdicts," "if [WHC] establishes coverage for any of the three causes of action, then [Grange] must indemnify [WHC] for the entire compensatory amount of the award." (R. 102, at 5.)

{¶ 18} Grange argues that WHC should have the burden of proof as to the allocation of the verdict between Vaughan's battery, WHC's negligent supervision, and the IIED by Vaughan "and/or" WHC, and that "[s]ince the verdict cannot be allocated, WHC's

action against Grange [for compensatory damages, attorney fees, and interest] must fail." (Corrected Grange brief, at 31.)  WHC counters that Grange has the burden of allocating a general verdict to prove that some or all of the award represents damages for non-covered claims.  WHC asserts that "[s]ince it is not possible to allocate the general compensatory verdicts, if WHC can establish coverage under *any* one of these three causes of action— battery, IIED, or negligent supervision—then Grange must indemnify WHC for the entire compensatory portion of the verdict."  (Emphasis sic.)  (WHC's brief opposing appeal, at 25.)

{¶ 19} In general, the insured has the burden of proving a loss and demonstrating coverage under the policy.  *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 19; *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 35, quoting *Inland Rivers Serv. Corp. v. Hartford Fire Ins. Co.*, 66 Ohio St.2d 32, 34 (1981). "Where a complaint alleges both covered and non-covered claims and a general verdict is entered against the insured, the insurer should only have an obligation to indemnify the insured for those damages, if any, that are covered, which is all that is required by the policy.  * * * The majority view of the cases outside Ohio that have addressed the issue is that the burden rests upon the insured to allocate a judgment and that the insured also bears the burden of demonstrating in the first instance that all or some portion of the judgment is, in fact, covered."  Young, Bekeny & Mesko, *Ohio Insurance Coverage*, Section 10:16 (2013); *see generally* 2 Windt, *Insurance Claims & Disputes*, Section 6:27 (6th Ed.2013), and cases cited in fn. 5 ("[m]ost courts have held that the burden is on the insured" to allocate the verdict to ascertain the amount of damages for which the insurer is responsible); *Morris v. Western States Mut. Auto. Ins. Co.*, 268 F.2d 790, 793 (7th Cir.1959), citing *Gen. Acc. Fire & Life Assur. Corp. v. Clark*, 34 F.2d 833 (9th Cir.1929) ("Where the judgment includes elements for which the insurer is liable and elements outside the range of coverage, apportionment of damages to the respective causes of action is a burden on the party seeking to recover from the insurer.").

{¶ 20} WHC asserts the trial court's placement of the burden on Grange to allocate the general verdict was correct pursuant to Ohio law.  *Lavender v. Grange Mut. Casualty Co.*, 4th Dist. No. 1417 (Aug. 27, 1979).  In that case, however, the appellate court expressly cautioned that it did "not find that the issue presented is actually one concerning which party has the burden of proving the allocation of a general verdict

rendered in a prior proceeding." *Id.* Therefore, reliance on *Lavender* is misplaced. Instead, this is an issue that has not yet been definitively decided in Ohio. *See Bank One, N.A. v. Echo Acceptance Corp.*, 522 F.Supp.2d 959, 978 (S.D.Ohio 2007) (Ohio law has not established a method of allocation, and the issue has not yet been addressed by the Supreme Court of Ohio).

{¶ 21} "[M]ost courts to have considered the question have held that while the insured generally bears the burden of allocating between covered and noncovered claims, that burden shifts to the insurer when the insurer had an affirmative duty to defend and fails to fulfill its duty," including the duty not to prejudice an insured's rights by failing to request special interrogatories or a special verdict to clarify coverage or damages. *See Automax Hyundai South, L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798, 808 (10th Cir.2013); 2 Windt, *Insurance Claims & Disputes*, at Section 6:27 (exception to general rule placing burden of allocating verdict on the insured "should be made to that rule in those cases in which the circumstances surrounding the defense of the underlying action were such that the insurer was obligated to seek an allocated verdict or advise the insured of the need for one" so that the burden should be placed on the insurer); *Duke v. Hoch*, 468 F.2d 973, 978-79 (5th Cir.1972) (a case in which the insurer did not specifically advise its insured of the insured's interest in an allocated verdict, insured was relieved of the burden to prove allocation of a verdict between covered and noncovered claims unless the insurer could prove that the verdict represented, in whole or in part, noncovered claims).

{¶ 22} This rule sensibly avoids any conflict of interest and places the burden on the party in the best position to discern and correct it—the insurer:

> As an initial matter, we note that an insurer who undertakes the defense of a suit against its insured must meet a high standard of conduct. The right to control the litigation carries with it certain duties. One of these is the duty not to prejudice the insured's rights by failing to request special interrogatories or a special verdict in order to clarify coverage of damages. The reason for this is that when grounds of liability are asserted, some of which are covered by insurance and some of which are not, a conflict of interest arises between the insurer and the insured. If the burden of apportioning damages between covered and non-covered were to rest on the insured, who is not in control of the defense, the insurer could obtain for itself an escape from responsibility merely by failing to request a special verdict or special interrogatories. The insurer is in the best position to

> see to it that the damages are allocated; therefore, it should be given the incentive to do so.

(Citations omitted.) *Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1498-99 (10th Cir.1994); *see also MedMarc Cas. Ins. Co. v. Forest Healthcare, Inc.*, 359 Ark. 495, 199 S.W.3d 58, 62 (2004).

{¶ 23} Therefore, the court should apply what appears to be the general rule that an insured has the burden to prove entitlement to coverage, including the burden of allocating a prior general award into covered and noncovered claims, but that where an insurer has a duty to defend the insured and fails to seek an allocated verdict or advise the insured of the need for one, the burden shifts to the insurer.

{¶ 24} Grange asserts that the burden of proving allocation of the verdict did not shift from WHC to Grange because it sent a reservation of rights letter to WHC, WHC engaged its own private counsel in addition to the counsel that Grange provided to it in the personal-injury trial, Grange advised WHC of its divergence of interests, and WHC's private counsel controlled the litigation.

{¶ 25} The record establishes, however, that Grange, pursuant to its insurance policies issued to WHC, retained a law firm to represent WHC in the Faietas' personal-injury case. Grange sent WHC a reservation of rights letter informing WHC that there were questions as to whether claims alleged in the case were covered by their insurance policies and that WHC may wish to consult with its private attorney. WHC engaged its own counsel in the matter to jointly defend it with the counsel provided by Grange in the case, and WHC, Vaughan, and their counsel entered into a joint defense agreement. The attorneys represented WHC and Vaughan in the trial and on appeal. *See Faieta v. World Harvest Church*, 147 Ohio Misc.2d 51, 2008-Ohio-3140, and *Faieta*, 2008-Ohio-6959. The counsel that Grange provided to WHC and Vaughan was shown the proposed jury interrogatories and was given the opportunity to review and comment on them, and Grange did not propose any interrogatories.

{¶ 26} Although the record indicates that Grange informed WHC there may be coverage issues and that Grange's provided counsel expressed concern that a reply brief in support of their motion for judgment notwithstanding the verdict and new trial did not include an argument "concerning the global or cumulative nature of the jury's verdict," Grange never advised WHC of the specific apportionment issue and of the need for special

interrogatories allocating damages. Grange's most specific notification about this issue came after the verdict had been returned and was provided only in the context of what to include in a reply brief in support of WHC's and its employee's post-trial motion. *See State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund*, 131 Ohio St.3d 111, 2012-Ohio-46, ¶ 10 (new argument in reply brief is forbidden). Further, notification was based on the contention of Grange's provided counsel that the general verdict violated WHC's and Vaughan's due process rights because it was so confusing and uncertain that the trial court could not properly apply statutory caps to the jury's award. Ultimately, Grange was satisfied with providing its insured, which it was defending in the case, with only the most general and vague statements concerning their divergent interests.

{¶ 27} Under these circumstances, the presence of WHC's independent counsel and Grange's notification to WHC of its reservation of rights did not constitute a discharge of Grange's duty to fully disclose the precise situation concerning the necessity of seeking an allocated verdict in the personal-injury case. *See Duke* at 979. If Grange truly believed that intervening in the case to submit special interrogatories would have compromised WHC and its employee's ability to advance their agreed upon joint defense, Grange or its provided counsel could have still discharged any duty by precisely advising WHC of the need for an allocation of the damages and the consequences of not obtaining one. *Id.* ("At the merits trial [the insurance company's] counsel was required to make known to the insured the availability of a special verdict and the divergence of interest between them and the insurer springing from whether damages were or were not allocated."). Neither Grange's reservation of rights nor the presence and participation of WHC's independently retained counsel during the Faietas' personal-injury case discharged Grange's duty. *See Arnett v. Mid-Continent Cas. Co.*, M.D. Florida No. 8:08-CV-2373-T-27EAJ, 2010 WL 2821981 (July 16, 2010), citing *Duke*.

{¶ 28} Moreover, notwithstanding Grange's claim to the contrary, its provided counsel sufficiently participated in the litigation for WHC so as to require it to properly notify WHC of the need for an allocated verdict or to seek the allocated verdict itself. In fact, it has been held that, even when the insurance company does not control the litigation, but monitors it and remains in regular contact with the insured's private counsel, the insurance company retains the burden because it remains "the most informed party concerning coverage issues and the potential difficulties of parsing a

general verdict as between covered and uncovered claims." *Pharmacists Mut. Ins. Co. v. Myer*, 187 Vt. 323, 993 A.2d 413, ¶ 15 (2010).

{¶ 29} Accordingly, the trial court did not err in finding that Grange had the burden to establish the specific allocation of the general verdict for covered and noncovered claims.

### 2. Coverage for WHC's Vicarious Liability for Employee's Intentional Torts

{¶ 30} The trial court determined that the parties' insurance policies provided coverage for the battery committed by Vaughan and the IIED committed by Vaughan and/or WHC. More specifically, the trial court found that, from WHC's perspective, the battery committed by its employee, Vaughan, constituted a covered occurrence, i.e., an accident, because the battery was not committed by an officer, director, or other principal of WHC. As to the IIED claim against Vaughan and WHC, the trial court found that if the tort was committed by Vaughn, the act would be a covered occurrence for the same reason underlying its finding on the battery issue. The trial court further found that if the tort was committed by WHC, it would be excluded from coverage under the policies' intentional-injury exclusion. The trial court concluded that, because Grange's counsel failed to submit special interrogatories that would have separated responsibility for the IIED claim, Grange had a duty to indemnify WHC for all the compensatory damages incurred under the IIED claim.

{¶ 31} Grange asserts that its insurance policies with WHC do not cover damages that may have been assessed for IIED or battery because: (1) an intentional tort is not an "occurrence" as required by the policies, and (2) there is no coverage for purely emotional injuries because they do not constitute a "bodily injury" as defined by the policies. (Corrected Grange Brief, at 40.)

{¶ 32} The parties entered into two insurance policies that are pertinent here, a commercial general liability ("CGL") policy and a commercial umbrella ("CU") policy. Section I, 1. a. of the CGL policy provides that Grange "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (R. 29, exhibit B, CGL Policy, at 1.) "This insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.' " Section I, 1. b. of the CGL Policy. (CGL Policy, at 1.) "Occurrence" is defined at Section V,

13. of the CGL policy as "an accident."  (CGL Policy, at 14.)  "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  Section V, 3. of the CGL Policy.  (CGL Policy, at 13.)

{¶ 33} Similarly, Section I, A. 1. a. of the CU policy provides that Grange "will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies." (R. 29, exhibit A, CU Policy, at 1.)  The "bodily injury" or "property damage" "must be caused by an 'occurrence.' "  Section I, A. 1. b. 3 of the CU Policy.  (CU Policy, at 1.)  "Occurrence" means "an accident."  Section VI, 14. a. of the CU Policy.  (CU Policy, at 14.)  Section VI, 4. of the CU policy defines "[b]odily injury" as "bodily injury, sickness or disease sustained by a natural person" and specifies that the definition "includes death, shock, fright, mental anguish, mental injury or disability which results from any of these at any time."  (CU Policy, at 13.)

{¶ 34} Grange first contends that the definition of "occurrence" in both the CGL and CU policies as an "accident" precludes coverage for Vaughan's battery or IIED against the Faietas.  The issue of liability coverage "hinges on whether the act is intentional from the perspective of the person seeking coverage."  *Safeco* at ¶ 24.  "When a liability insurance policy defines an 'occurrence' as an 'accident,' a negligent act committed by an insured that is predicated on the commission of an intentional tort by another person, e.g., negligent hiring or negligent supervision, qualifies as an 'occurrence.' "  *Id.* at paragraph one of the syllabus.

{¶ 35} WHC's liability under the insurance policies for Vaughan's intentional actions underlying his battery and IIED rested on its vicarious liability for the acts of its employee—Vaughan—that WHC admitted in the personal-injury case were committed within the scope of his employment with it.  *See Faieta*, 2008-Ohio-6959, at ¶ 46.  In general, a principal is vicariously liable for the torts of its employees under the doctrine of respondeat superior.  *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, ¶ 20.

{¶ 36} Despite Grange's claim that, for insurance coverage purposes, the intentional conduct of Vaughan should be imputed to his employer, WHC, it has been determined that "[o]ne of the most common situations in which courts have found coverage for vicarious liabilities is where an employer is held liable for the intentional

injuries or damage(s) caused by one of its employees under the theory of respondeat superior."  French, *Debunking the Myth that Insurance Coverage is Not Available or Allowed for Intentional Torts or Damages*, 8 Hastings Bus.L.J. 65, 90 (2012).  Claims of negligence or vicarious liability against employers for intentional acts by employees constitute an "occurrence" under liability insurance policies.  *See TIG Ins. Co. v. Travelers Ins. Co.*, D.Or. No. CV-00-1780-ST, 2003 WL 24051560 (Mar. 24, 2003); *McLeod v. Tecorp Internatl., Ltd.*, 117 Or.App. 499, 503, 844 P.2d 925, 927 (1992), *rev'd on other grounds*, 865 P.2d 1283 ("Vicarious liability is imposed as a risk allocation between the employer and an innocent plaintiff and, therefore, does not require any degree of fault on the employer's part."); *compare K & T Ents., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 179 (6th Cir.1996) (insured corporation denied fire insurance coverage when arson was committed by president, sole officer, and 50 percent shareholder in the corporation, who is married to the other 50 percent shareholder).

{¶ 37} Therefore, unless corporate management committed the intentionally wrongful conduct, the corporate insured will not be denied coverage on the basis of an employee's intentional tort.  *See generally* 3 Windt, *Insurance Claims & Disputes*, Section 11:9 (6th Ed.2013).  WHC's corporate management did not commit Vaughan's intentionally wrongful conduct.  Grange's contention that WHC is precluded from recovering for Vaughan's IIED and battery because of the definition of "occurrence" in its insurance policies consequently lacks merit.

{¶ 38} Grange secondly claims there is no coverage for purely emotional injuries because they do not constitute "bodily injury" as required by the policies.  Grange's claim fails, however, because the CU policy expressly includes "mental anguish, mental injury or disability" resulting from any bodily injury at any time.

{¶ 39} Moreover, both policies provide coverage for damages incurred "because of 'bodily injury.' "  It is true that nonphysical harms, like emotional distress, are not "bodily injury" as commonly defined in many insurance policies.  *See, e.g., Bernard v. Cordle*, 116 Ohio App.3d 116, 120-21 (10th Dist.1996); *Johnson v. Am. Family Ins.*, 160 Ohio App.3d 392, 2005-Ohio-1776, ¶ 25-29 (6th Dist.).  However, even in those jurisdictions in which emotional distress damages do not qualify as "bodily injury" for insurance coverage, these damages "may nevertheless be covered as damages 'because of' bodily injury or property damage."  Turner, *Insurance Coverage of Construction Disputes*, Section 2:53 (2d

Ed.2013); *see also* Young, Bekeny & Mesko, *Ohio Insurance Coverage*, Section 3:1 (2013) (CGL policies that provide coverage for damages "*because* of 'bodily injury' or 'property damage' (to which the insurance applies)" covers the resulting damage flowing from the "bodily injury" or "property damage" even if it consists of something other than "bodily injury" or "property damage"). (Emphasis sic.) The pertinent portions of the CGL and CU policies do not state that the insured or the primary victim of the insured's conduct must be the one who suffered the bodily injury—for example, the CGL policy requires only that the insured be legally obligated to pay damages (including mental suffering) for what could be someone else's bodily injury. *See Willett v. Geico Gen. Ins. Co.*, 10th Dist. No. 05AP-1264, 2006-Ohio-3957, ¶ 9 (insurance policy's statement providing coverage for "damages for bodily injury caused by accident which the insured is legally entitled to recover" did not preclude coverage for mental suffering); *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004) (negligent infliction of emotional distress claim covered under policy providing coverage to "any other person who is legally entitled to recover because of bodily injury to [the insured]"). *Bernard* and *Johnson* are distinguishable because the policies considered therein included different policy language than that at issue here.

{¶ 40} Therefore, Grange's contention that the trial court erred in ruling that WHC is entitled to coverage for Vaughan's IIED and battery lacks merit. Grange's suggestion that the trial court also erred in determining that the policies covered WHC's own IIED is incorrect. The trial court held that "if the jury found that [WHC] committed the intentional infliction of emotional distress, it would be an intentional tort committed by [WHC], and therefore would fall under the intentional injury exclusion of the insurance policy." (R. 102, at 6-7.) Thus, WHC's own IIED, assuming that the jury determined any, was not covered by the insurance policies.

{¶ 41} Consequently, before determining whether any exclusion is applicable, Grange's policies provided coverage for WHC's vicarious liability for its employee's intentionally tortious conduct.

### 3. Abuse or Molestation Exclusion

{¶ 42} The trial court determined that a coverage exclusion for abuse or molestation in both the CGL and CU policies was ambiguous and, thus, did not bar WHC from coverage for Vaughan's battery and WHC's negligent supervision of Vaughan.

{¶ 43} Grange claims that the trial court erred in so concluding. The CGL and CU policies contained identical language entitled "Abuse or Molestation Exclusion":

> This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of:
>
> 1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
>
> 2. The negligent:
>
> * * *
> c. Supervision;
>
> * * *
>
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by 1. above.

(R. 29, exhibits A and B.)

{¶ 44} When an insurer denies coverage based on an exclusion, it bears the burden of demonstrating that the exclusion applies. *Sauer v. Crews*, 10th Dist. No. 12AP-320, 2012-Ohio-6257, ¶ 30. Insurance coverage is determined by the policy language. *Allstate Ins. Co. v. Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, ¶ 10; *Reed v. Davis*, 10th Dist. No. 13AP-15, 2013-Ohio-3742, ¶ 10. Courts give undefined words in an insurance policy their plain and ordinary meaning. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995).

{¶ 45} The plain and ordinary meaning of the word "abuse," which is not defined in the CGL and CU policies, is, as pertinent here, physical maltreatment.[2] *See Black's Law Dictionary* 10 (9th Ed.2009), defining "abuse" as "[p]hysical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury"; *Webster's Encyclopedic Unabridged Dictionary* 7 (1996), defining "abuse" as "bad or improper treatment; maltreatment"; *see also Discover Property & Cas. Ins. Co. v. Scudier*, D.Nevada No. 2:12-CV-836 JCM (CWH), 2013 WL 2153079 (May 16, 2013) (stating that

---

[2] Although both parties cite the R.C. 2151.031 definition of "abused child," this statutory definition is inapplicable because that definition is limited, by its own terms, to application of the phrase in R.C. Chapter 2151, i.e., "[a]s used in this chapter."

"abuse," which was undefined in the insurance policies, meant according to the definition in the Oxford Dictionaries to " 'use or treat in such a way as to cause damage or harm' " or to " 'treat with cruelty or violence, especially regularly or repeatedly' "); *State v. Eagle Hawk*, 411 N.W.2d 120, 123 (S.D.1987), fn. 5 (noting that "abuse" is defined in *Webster's New Collegiate Dictionary* 5 (1980) as "improper use or treatment" and "physical maltreatment").

{¶ 46} WHC's narrow construction of the term "abuse" as only "sexual abuse" is, thus, belied by the above authorities which define the term more broadly to include physical abuse. WHC cites no authority holding that an abuse or molestation exclusion does not preclude coverage for injuries arising from nonsexual assault, and our independent research has revealed no such authority. To the contrary, in *Cincinnati Ins. Co. v. Hall*, Mich.App. No. 297600, 2011 WL 2342704, the court held, in an appeal involving a declaratory judgment action concerning insurance coverage, that an "abuse or molestation exclusion" precluded coverage for injuries arising from nonsexual assault because "there is no reason why 'abuse' or 'molestation' *must* be sexual in nature" so that "the plain meanings of the words encompass a broader range of possible acts and behaviors, and we find no authority requiring their use in an insurance policy to be artificially restricted to only sexual acts or behaviors." (Emphasis sic).

{¶ 47} Moreover, the exclusion is not ambiguous. "The mere absence of a definition of a term in a contract does not make the term ambiguous." *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 152 Ohio App.3d 345, 2003-Ohio-1654, ¶ 37 (10th Dist.). *See, e.g., Community Action for Greater Middlesex Cty., Inc. v. Am. Alliance Ins. Co.*, 254 Conn. 387, 402, 757 A.2d 1074, 1083 (2000), and cases cited therein ("plaintiff has not identified any case, and we are aware of none, in which a policy exclusion for abuse or molestation has been deemed ambiguous").

{¶ 48} The jury in the personal-injury trial expressly found in its answers to interrogatories that Vaughan "intentionally harmed" the Faietas' minor child and that Vaughan's battery directly and proximately caused damages to the Faietas. (R. 3, exhibit No. 3.) As the trial court in *Faieta* held in ruling on the post-trial motions in that case, the jury, in effect, determined that the marks on the child's body "were a result of abuse" by Vaughan. *Faieta*, 2008-Ohio-3140, ¶ 39. Therefore, it was conclusively determined in the personal-injury case that Vaughan's battery constituted abuse of the Faietas' minor child,

which was excluded from coverage under Section 1 of the abuse or molestation exclusion of the CGL and CU policies. *See Howell v. Richardson*, 45 Ohio St.3d 365 (1989), paragraph one of the syllabus ("Where a determination is made in an initial action against a tortfeasor relative to his culpable mental state, collateral estoppel precludes relitigation of the determination in a subsequent proceeding brought against the tortfeasor's insurer pursuant to R.C. 3929.06.").

{¶ 49} Moreover, Section 2(c) of the abuse or molestation exclusion precluded coverage for WHC's negligent supervision of Vaughan's intentionally tortious conduct under the CGL and CU policies. Contrary to WHC's contention, the Supreme Court of Ohio's decision in *Safeco* does not require a different result because that case did not involve such a specifically worded exclusion. That case merely held that "[i]nsurance-policy exclusions that preclude coverage for injuries expected or intended by an insured, or injuries arising out of or caused by an insured's intentional or illegal acts, do not preclude coverage for the negligent actions of other insureds under the same policy that are predicated on the commission of those intentional or illegal acts, e.g., negligent hiring or negligent supervision." *Id.* at paragraph two of the syllabus. *Safeco* did not involve the construction of an abuse or molestation exclusion.

{¶ 50} In *Crow v. Dooley*, 3d Dist. No. 1-11-59, 2012-Ohio-2565, the court ruled that a sexual-molestation exclusion applied to preclude coverage for all bodily injury arising out of acts of sexual molestation, irrespective of the mental state, including negligence, of the insured. The court averred that its holding was not at odds with *Safeco* because both of the exclusions at issue in that case included specific language that did not preclude coverage for injuries predicated on an allegation of negligence. In contrast to the pertinent policy provisions in *Safeco*, the exclusion at issue here specifically precluded coverage based on WHC's negligent supervision.

{¶ 51} WHC further claims that a 1993 corporal-punishment endorsement in the CGL policy renders the abuse or molestation exclusion inoperable. We disagree. By its very terms, the corporal punishment endorsement provides an exclusion only to the exclusion for bodily injury or property damage expected or intended from the standpoint of the insured:

CORPORAL PUNISHMENT

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> Exclusion a. of paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) is replaced by the following:
> This insurance does not apply to:
>
> a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.
>
> *This exclusion does not apply to "bodily injury" resulting from*:
>
> (1)  The use of reasonable force to protect persons or property; or
>
> (2) *Corporal punishment to your student* administered by or at the direction of any insured.

(Emphasis added.)  (R. 29, exhibit B.)

{¶ 52} The manifest language of this endorsement applies only to permit coverage that would otherwise have been excluded under the "expected or intended from the standpoint of the insured" exclusion.  It does not purport to limit, for example, the 1998 endorsement for the "abuse or molestation exclusion" in the CGL policy.  Moreover, an additional 1998 endorsement to the CGL policy sets forth a "corporal punishment" exclusion that specifies that the insurance provided by the policy "does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' to your student arising out of any corporal punishment administered by or at the direction of any insured."  (R. 29, exhibit B.)  Therefore, the 1993 corporal punishment endorsement does not change the fact that claims concerning Vaughan's battery and WHC's negligent supervision are excluded under the policy's CGL abuse or molestation exclusion.  Because the language of the policy controls our analysis, WHC's citation of Grange notes and deposition testimony of a Grange representative to the effect of what they thought was covered by the policy does not change this result.

{¶ 53} Nor are we persuaded that interpreting the abuse or molestation exclusion as broadly as its plain language dictates would—as WHC argues—render the insurance coverage provided by the policies illusory. Where there is some benefit to an insured through an insurance policy, it is not illusory. *See Ward v. United Foundries*, 129 Ohio St.3d 292, 2011-Ohio-3176, ¶ 24. The policies' exclusion is limited to abuse or molestation occurring to "any person while in the care, custody or control of any insured," while the insurance coverage encompasses circumstances beyond harm to people in the "care, custody or control" of WHC or any of its employees. The policies are not illusory.

{¶ 54} Therefore, Grange's argument has merit. The trial court erred in ruling that claims involving Vaughan's battery and WHC's negligent supervision of him were covered under the insurance policies. They were excluded under the abuse or molestation provisions.

{¶ 55} The Faietas' claims for compensatory damages directly against WHC were for its negligent supervision of Vaughan and based on the ambiguity in the pertinent jury interrogatory, possibly for WHC's IIED. Pursuant to the foregoing discussion, the negligent supervision claim is excluded from coverage under the abuse or molestation exclusions of the CGL and CU policies. The trial court determined that if the jury did find against WHC for its own direct IIED, that claim was excluded from coverage because it did not constitute a covered occurrence. The claim for Vaughan's battery was also excluded from coverage under the policies' abuse or molestation exclusions. Nevertheless, the claim for Vaughn's IIED, which WHC is vicariously liable for, was not excluded from coverage under the policies.

{¶ 56} As previously discussed, it is Grange's burden to prove which claims were covered and which were not. Grange has met that burden here. The May 23, 2008 judgment of the trial court in the personal-injury case brought by the Faietas against WHC and its employee, Vaughan, specifies $82,365 as the amount of compensatory damages for which Vaughan was primarily, and WHC was secondarily, liable. This amount represents the damages for the claims of battery and, potentially, IIED against Vaughan. The remainder of the $549,100 compensatory damage award—$466,735—was excluded from coverage.

{¶ 57} Therefore, any amount of compensatory damages for which WHC was found to be directly liable in excess of the $82,365 ($466,735) that could have represented

all the damages from any covered IIED claim against Vaughan was established by Grange to be excluded from coverage under the policies. Consequently, Grange's assignment of error is sustained to this extent.

### 4. Attorney Fees and Postjudgment Interest

{¶ 58} In the personal-injury case, the trial court ordered WHC to pay the Faietas $693,861.87 in attorney fees. In the indemnification action brought by Grange, the trial court determined that Grange was obligated to provide coverage to WHC for the attorney fees and the $229,716 in postjudgment interest.

{¶ 59} Grange asserts the trial court erred in so determining because there was no proof that any of the claims were covered. But, as previously discussed, there was coverage for the claim of IIED against Vaughan for which WHC was vicariously liable. Moreover, even if the attorney fees were awarded solely because of the punitive damages assessed against WHC, "[a]ttorney fees are distinct from punitive damages, and public policy does not prevent an insurance company from covering attorney fees on behalf of an insured when they are awarded solely as a result of an award for punitive damages." *Neal-Pettit v. Lahman*, 125 Ohio St.3d 327, 2010-Ohio-1829, syllabus. Finally, because the attorney fees cannot now be allocated between the covered and noncovered claims, Grange is liable for the entire amount.

{¶ 60} The postjudgment interest was also recoverable under the CGL and CU policies. Nevertheless, because some of the postjudgment interest is attributable to the compensatory damages that are excluded from coverage, that portion of the interest award is vacated.

{¶ 61} In sum, Grange's assignment of error is sustained insofar as the trial court erred in determining that WHC is entitled to coverage under the insurance policies for the direct compensatory claims against WHC for negligent supervision and IIED. Accordingly, we reverse the judgment of the trial court to this extent and the portion of the postjudgment interest award attributable to this amount. The remainder of Grange's assignment of error is overruled. The remainder of the judgment, including the declaration that Grange must indemnify WHC for the $82,365 in compensatory damages for which WHC is secondarily liable, the $693,861 in attorney fees, and the postjudgment interest attributable to this portion of the judgment, is affirmed.

B. *WHC'S Cross-Appeal*

{¶ 62} In its cross-assignments of error, WHC claims the trial court erred in holding that Grange was not obligated to indemnify WHC for the $1,628,470 in punitive damages awarded against it directly and secondarily in the personal injury case.

{¶ 63} The trial court denied WHC's claim for coverage for the punitive damages awarded against it directly and secondarily in the personal injury case. The trial court did not err in so holding for the following reasons.

{¶ 64} First, R.C. 3937.182(B) prohibits insurance coverage of punitive damages. *Neal-Pettit* at ¶ 21. The statute states in pertinent part that "no other policy of casualty or liability insurance that is covered by sections 3937.01 to 3937.17 of the Revised Code and that is so issued, shall provide coverage for judgments or claims against an insured for punitive or exemplary damages." R.C. 3937.03(C)(1) refers to "[c]ommercial insurance," which is defined as "any commercial casualty or commercial liability insurance except sickness and accident, fidelity and surety, and automobile insurance as defined in section 3937.30 of the Revised Code." The Grange CGL and CU policies are commercial liability policies and are, thus, prohibited from providing coverage for punitive or exemplary damages.

{¶ 65} Second, "public policy prevents insurance contracts from insuring against claims for punitive damages based upon an insured's malicious conduct." *Neal-Pettit* at ¶ 21. As this court previously decided in *Faieta*, 2008-Ohio-6959, ¶ 43, the Faietas presented sufficient evidence of WHC's malice, including its conscious disregard of the well-being and safety of A.F. and the other young children in its care, to justify the trial court's award of punitive damages against WHC.

{¶ 66} Third, WHC's belated citation of R.C. 2719.01 at oral argument does not modify this result. An issue raised for the first time at oral argument and not assigned as error in an appellate brief is untimely. *Watkins v. Dept. of Human Servs.*, 10th Dist. No. 00AP-224 (Oct. 31, 2000).

{¶ 67} Finally, the CU policy contained an endorsement that expressly excludes insurance coverage for punitive or exemplary damages.

{¶ 68} Thus, the trial court did not err in determining that Grange is under no duty to provide coverage for punitive damages in this case. WHC's cross-assignments of error are overruled.

## V. CONCLUSION

{¶ 69} Having sustained part of Grange's assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas determining that Grange must indemnify WHC for the $466,735 in compensatory damages awarded directly against WHC for its negligent supervision of Vaughan and for its IIED on the Faietas and awarding postjudgment interest on this portion of the award for compensatory damages. Having overruled the remainder of Grange's assignment of error, we affirm the judgment of the trial court determining that Grange must indemnify WHC for the $82,365 in compensatory damages for which it is secondarily liable for its employee's intentional torts, for the $693,861 in attorney fees, and for that portion of the postjudgment interest award on these amounts. Finally, having overruled WHC's cross-assignments of error, we affirm the judgment of the trial court determining that Grange has no obligation to indemnify WHC for any portion of the punitive damages awarded.

*Judgment affirmed in part;*
*reversed in part, and cause remanded.*

BROWN and McCORMAC, JJ., concur.

McCORMAC, J., retired, formerly of the Tenth Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____